## SCOGGIN v. CITY NATIONAL BANK.

Opinion delivered November 21, 1927.

1. CORPORATIONS—DISSOLUTION.—In a suit against a corporation where the pleadings and testimony did not raise the issue of insolvency, it was error to dissolve the corporation and appoint a receiver.

2. CORPORATIONS—RIGHT TO SUE FOR DISSOLUTION.—An individual creditor of the chief stockholder of a corporation could not, under Crawford & Moses' Dig., §§ 1820, 1821, sue to dissolve the corporation on the ground of insolvency without having obtained judgment against the stockholder and purchased his stock after levy, as the statute confers this right only on creditors and stockholders of the corporation.

3.   Fraudulent conveyances—estoppel.—Where a creditor of a stockholder in a corporation sued the corporation as well as the stockholder for the stockholder's debt, claiming that the purchase by another corporation of the property of the former corporation was fraudulent, *held* that the creditor's action in dealing with the second corporation as a *bona fide* corporation, and accepting the personal indorsement of incorporators of the latter, estopped such creditor from maintaining that the transfer of the property of the first corporation to the second was fraudulent.

4.   Estoppel—when held not to arise.—Where a creditor sued the indorser of a note of a corporation, such creditor was not estopped to assert its rights against the indorser, merely because, at the latter's request, it had permitted the corporation to remove its assets from the State.

5.   Fraudulent conveyances—voluntary conveyance.—Where the indorser of a note without consideration transferred stock in the corporation to another, the payee could follow such stock and subject it to the indorser's debts.

6.   Insurance—duty to reinsure.—Where a bank had accepted as collateral certain property of a corporation, the insurance on which expired during the time the property was pledged as collateral, without the bank reinsuring, and thereafter the property was destroyed by fire, *held* in an action by the bank on the note, that the bank could not be held liable to the defendant indorser for failure to reinsure, where the insurance companies refused to insure.

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; reversed in part.

STATEMENT OF FACTS.

The Model Window Glass Company was organized and incorporated in the latter part of 1917, with a capitalization of $75,000. C. P. Zenor, Sr., owned $24,000 of the stock. The owners of the balance of the stock resided in West Virginia. The plant was located in Fort Smith, Arkansas, and was operated by C. P. Zenor, Sr., very successfully. The profits were so large that he purchased the balance of the stock through the efforts of I. H. Nakdimen at $1.30 on the par value thereof, giving Nakdimen $10,000 for his services. It does not appear just what proportion of the stock was assigned to the various members of the family, or whether any of it was ever delivered to them, but the absolute control

and disposition of the corporation and the plant was vested in C. P. Zenor, Sr. The corporation was dominated and operated by him. A large insurance was carried upon the property or plant and assets, and eventually it was destroyed by fire. C. P. Zenor, Sr., collected $135,000 insurance, and rebuilt the plant. He began the reconstruction of it in 1923 and completed it in the summer of 1924, but was unable to procure any insurance thereon as a result of the fire, and on account of an attempt to operate same without any union employees. In the latter part of the summer of 1925 the plant was shut down, and remained idle, on account of Zenor's inability to get insurance and sufficient money to pay the existing indebtedness and with which to repair and operate the plant. At the time it owed the City National Bank about $23,000, to secure which it had pledged glass to the value of about $35,000 or $38,000; and about $10,447, to secure which it had assigned bills receivable in an equal or greater amount. It also had on hand assets or salable stock of the value of $6,761. Its other indebtedness did not exceed $16,000. Its plant and real estate were worth between $100,000 and $125,000, according to the weight of the evidence.

In 1922 C. P. Zenor, Sr., organized and incorporated the Zenor Bottle Company. I. H. Nakdimen and J. B. McDonough were stockholders and officers in that company, Nakdimen having subscribed for $1,000 of the stock and McDonough for $2,000. The balance of the stock was owned by C. P. Zenor, Sr., and his family. He dominated and operated this corporation also. The plant was insured for $34,000. This insurance was assigned to the City National Bank to secure certain notes given to it for borrowed money. The plant, while in operation, together with its salable assets, was worth about $75,000. C. P. Zenor, Sr., purchased I. H. Nakdimen's stock and contracted to purchase J. B. McDonough's stock. A part of the indebtedness owed by the company to the City National Bank and all of the indebtedness it owed I. H. Nakdimen was secured by the per-

sonal indorsement of C. P. Zenor, Sr. The company owed a considerable sum to its creditors. Twenty-three thousand dollars of the insurance assigned to the City National Bank expired, and Nakdimen was unable to get it renewed or written by other companies, on account of C. P. Zenor, Sr., owning stock therein. The insurance companies refused to insure property in which he was interested.

On March 8, 1925, the plant of the Zenor Bottle Company was destroyed by fire. The unexpired insurance was collected and applied on the notes secured by an assignment of the insurance policies. After the fire C. P. Zenor, Sr., executed a note to J. B. McDonough for $2,000 to pay for his stock, and for $1,000 to pay I. H. Nakdimen for his stock. The machinery saved from the fire was probably worth about $15,000, and, according to the weight of the testimony, was moved to Bristow, Oklahoma, and used in the construction of a glass plant there, which the Zenor Bottle Company acquired as a bonus to put up the plant. Before moving all of the property to Oklahoma, all of the creditors were notified, and acquiesced in its removal. The balance which the Zenor Bottle Company owed the City National Bank and I. H. Nakdimen, after giving credit for the amount paid by the insurance companies, was $11,715.07, which bore interest at the rate of 10 per cent. per annum from the 4th day of October, 1926; and the amount C. P. Zenor, Sr., owed J. B. McDonough was $2,164.33, with interest from the 4th day of October, 1926. The amount it owed the City National Bank was secured by the personal indorsement of C. P. Zenor, Sr.

C. P. Zenor, Sr., being desirous of operating the Model Window Glass Company, entered into an agreement with J. S. Hill and A. H. Scoggin by which they were to advance not to exceed $15,000 with which to pay the urgent debts of the Model Window Glass Company, make necessary repairs on the plant, take out insurance thereon, and to pay immediate running expenses. The agreement contemplated the organization of a new cor-

poration, to be known as the Magnolia Window Glass Company, with a stock capitalization of $75,000, to which the real estate and plant of the Model Window Glass Company should be transferred. As a part of the agreement one-half of the stock in the new corporation was to be issued to J. S. Hill and A. H. Scoggin and the other half to J. R. Miller, a son-in-law of C. P. Zenor, Sr. The purpose of issuing one-half of the stock in the new corporation to J. R. Miller was to eliminate the name of C. P. Zenor, Sr., so that insurance could be procured on the plant. Both C. P. Zenor, Sr., and J. R. Miller testified that Miller executed a note to Zenor for the stock, but that it was not paid, and no one seemed to know what became of it. The only reasonable inference that can be drawn is that C. P. Zenor, Sr., made his son-in-law a present of the stock, or else that J. R. Miller is holding it in trust for C. P. Zenor, Sr., the latter inference being the more probable. Pursuant to the arrangement, the Magnolia Window Glass Company was incorporated on August 1, 1925, with a stock capitalization of $75,000, $37,000 of which was issued to J. S. Hill and A. H. Scoggin and $37,500 to J. R. Miller, but none of them paid anything into the treasury of the Magnolia Window Glass Company for the stock, and its articles of incorporation were filed with the county clerk of Sebastian County, Fort Smith District, on August 5, 1925, and the real estate and plant of the Model Window Glass Company were conveyed by it to the Magnolia Window Glass Company for the nominal consideration of $10. This deed was placed on record on August 7, 1925. The real consideration for the transfer of the property and for the stock issued to J. S. Hill and A. H. Scoggin in the Magnolia Window Glass Company was the agreement on their part to advance not to exceed $15,000 to put the plant in operation. Subsequent to the transfer J. S. Hill and A. H. Scoggin purchased the salable stock or personal assets which the Model Window Glass Company had on hand, valued at $6,761, the consideration therefor being paid on the debts of the Model Window Glass Com-

pany. It is not made plain whether this money constituted a part of the $15,000 they agreed to advance, and, if so, whether they sold these assets to the Magnolia Window Glass Company. If they turned them over to the new corporation, we think the presumption should be indulged that the company paid for them. A. H. Scoggin testified that he and Hill paid out about $12,000 on the debts of the Model Window Glass Company and for repairs on the plant, labor, etc. They began to operate the plant on the ................day of September, 1925. A. H. Scoggin became president, J. S. Hill vice president, and J. R. Miller secretary and treasurer. C. P. Zenor, Sr., supervised the manufacture of the glass. Scoggin, Miller and Zenor drew salaries for their services. It does not appear definitely whether the money they paid for the assets of the Model Window Glass Company, which was used in the payment of its debts, constituted a part of the $12,000 they advanced. The items specified by A. H. Scoggin as entering into the amount paid out by them was $1,401 on a trade acceptance of the National Zinc Company, which was collected by J. B. McDonough, $1,100 to the National Glass Window Association, $5,357 for labor before the plant was in shape to run, and $6,000 for repairs and improvements.

On September 3, 1925, J. S. Hill and A. H. Scoggin indorsed notes of the Model Window Glass Company to the City National Bank for either $33,447 or $33,667.79, and took an assignment of the glass and bills receivable which the Model Window Glass Company had pledged and assigned to said bank and to secure the notes which they indorsed. This was a separate transaction entirely from the transfer of the real estate and plant of the Model Window Glass Company to the Magnolia Window Glass Company. It seems that on September 5, 1925, J. S. Hill and A. H. Scoggin required J. R. Miller to assign them $31,500 of the stock which had been issued to him in the Magnolia Window Glass Company as additional security to protect them against loss on account of this indorsement or any other amounts they had or might

advance or become responsible for. Several months afterwards they paid the notes which they had indorsed to the City National Bank. They collected the bills receivable and sold the major portion of the glass which was returned to them in consideration for the indorsement of the notes which they afterwards paid. It does not appear definitely what they received for the glass. The presumption must be indulged that they received their money back which they paid out on the indorsement, especially in view of the fact that the window glass they received was worth between $35,000 and $38,000. If not worth this much, we think that the weight of the evidence shows that there was a nice margin or equity in the value of the glass above the amount necessary to pay the City National Bank for which the glass had been pledged.

The bills receivable which they collected were ample to pay about one-third of the amount for which they indorsed. The balance of the Miller stock in the Magnolia Window Glass Company, amounting to $6,000, was assigned to Thomas F. Lilly to secure an indebtedness of $2,600, which the Model Window Glass Company owed him as commissions for selling window glass before the sale of its plant to the Magnolia Window Glass Company. There were other creditors of the Model Window Glass Company besides the City National Bank and Lilly at the time it sold its real estate and plant to the Magnolia Window Glass Company, but they have not asked to set the sale aside or made any complaint concerning the transfer of real estate and plant of the Model Window Glass Company to the Magnolia Window Glass Company.

There was no secret about the organization of the Magnolia Window Glass Company nor purpose for which it was organized. The articles of incorporation were filed with the county clerk, and the deed conveying the real estate and plant of the Model Window Glass Company to it was filed and recorded afterwards. I. H. Nakdimen, president of the City National Bank, had dealings with Hill and Scoggin with reference to indors-

ing the bank's notes against the Model Window Glass Company and J. B. McDonough in the collection of the claim of the National Zinc Company, which revealed a personal knowledge on their part of facts sufficient to put them on inquiry.

At the time the case was tried, on April 28, 1926, A. H. Scoggin testified it had 16,000 boxes of glass on hand, worth $50,000, material worth $4,000, and accounts receivable in the amount of $6,005; that during the period it operated the plant it sold $133,000 worth of glass. This included the glass of the Model Window Glass Company that was pledged to the City National Bank and afterwards assigned to J. S. Hill and A. H. Scoggin; that it owed the Merchants' National Bank $35,000, which Hill and Scoggin had indorsed, and owed Hill $2,100, and himself $600.  According to his statement, and it seems to be undisputed, the products, materials and bills receivable were sufficient to pay all its debts and leave a margin of $15,000 or $20,000, besides the plant and real estate in the clear for the stockholders.

The City National Bank as plaintiff, and J. B. McDonough as intervener, brought suit in the chancery court of Sebastian County, Fort Smith District, to obtain personal judgment against C. P. Zenor, Sr., for their respective claims, and against all of the appellants to set aside the sale of the real estate and plant of the Model Window Glass Company to the Magnolia Window Glass Company, and to invalidate the incorporation of the Magnolia Window Glass Company, if necessary, in order that the capital stock and assets of the Model Window Glass Company might be subjected to the payment of said indebtedness.  The gist of the complaint is that the whole transaction was a fraudulent scheme to withdraw and cover up C. P. Zenor's stock and property interest in the Model Window Glass Company for the purpose of cheating and hindering appellees and their creditors from collecting their claims.  No actual fraud was charged against A. H. Scoggin and J. S. Hill, but it was alleged that they acquired their stock in the Mag-

nolia Window Glass Company and through it an interest in the real estate and plant of the Model Window Glass Company without consideration. Actual fraud was charged against C. P. Zenor, Sr., and J. R. Miller, but was not charged against A. H. Scoggin and J. S. Hill, and no personal judgment was prayed against them on account of their participation in the transaction.

The substance of the prayer of the complaint was for personal judgment against C. P. Zenor, Sr., for the amount stated; that his stock in the Model Window Glass Company be impounded and brought into court and held subject to the order of the court; that the stock of Miller in the Magnolia Window Glass Company be impounded, and the stock of C. P. Zenor, Sr., be held subject to the order of the court; that the deed from the Model to the Magnolia be canceled and held for naught; that Miller be required to deliver up the stock in his name in the Magnolia and Zenor be required to deliver up his stock in the Model, and that the claims be declared a lien upon said stock and all interest of Zenor, Sr., therein, and that the stock of Zenor, Sr., be sold to satisfy the claims; and that, if necessary, in order to subject the interest of C. P. Zenor, Sr., to the payment of appellees' debts, the incorporation of the Magnolia Window Glass Company be set aside and held for naught; and to all general and special relief to which they might be entitled.

In the several answers filed the indebtedness was admitted, but all other material allegations in the complaint were denied, it being alleged that the transfer of the real estate and plant of the Model Window Glass Company to the Magnolia Window Glass Company was a *bona fide* sale and for a valuable consideration. It was further alleged that appellees were estopped from attacking the sale or questioning the validity of the transfer of the stock in the Model Window Glass Company to J. R. Miller or the incorporation of the Magnolia Window Glass Company and the issuance of the stock in the Magnolia Window Glass Company to J. S. Hill, A. H. Scoggin and J. R. Miller, by their consent to the removal

of the assets of the Zenor Bottling Company out of the State and in failing to object to the incorporation of the Magnolia Window Glass Company and transfer of the property of the Model Window Glass Company to it, and in collecting other claims which the Model Window Glass Company owed to the City National Bank, and the claim which was collected from Ŝcoggin and Hill by J. B. McDonough against the Model Window Glass Company, in the collection of which he refused to take an acceptance from the Magnolia Window Glass Company.

The Zenor Bottle Company filed a cross-complaint for $23,000 against the City National Bank on account of its neglect to take out new insurance when the old policies had lapsed, which said corporation had assigned to the bank to secure debts which it owed said bank.

The City National Bank filed an answer, denying any liability growing out of its failure to secure new insurance after the old policies lapsed, alleging that it was impossible to get any insurance on property in which C. P. Zenor, Sr., was interested.

The cause was submitted to the court upon the issues joined by the pleadings and the evidence adduced by the respective parties, which resulted in a judgment for the debts and a decree declaring both corporations insolvent, and the transactions by which the real estate, plant and capital stock of the Model Window Glass Company passed to the Magnolia Window Glass Company and to A. H. Scoggin, J. S. Hill and J. R. Miller, without consideration, fraudulent and void as to the creditors of the Model Window Glass Company and C. P. Zenor, Sr.; and subjecting the real estate, plant and capital stock of the Model Window Glass Company to the payment of the claims of creditors of said company and of C. P. Zenor, Sr.; and, for the purpose of winding up the affairs of said corporations, appointing a receiver, allowing all creditors of the Model Window Glass Company and C. P. Zenor, Sr., to present their claims for allowance to the receiver, subject to the approval of the court.

*Evans & Evans* and *Cravens & Cravens* and *Webb Covington,* for appellant.

*James B. McDonough,* for appellee.

HUMPHREYS, J., (after stating the facts).   In making a statement of the case we did not attempt to set out the pleadings at length, or the substance of the testimony of each witness introduced, or the decree *in extenso.*   Had we done so, it would have unduly lengthened the statement.   We confined ourselves to a statement of the issues joined, our conclusion of facts, after a careful reading and analysis of the testimony, and the substance of the decree.

The issues joined did not involve the solvency or insolvency of either the Model Window Glass Company or the Magnolia Window Glass Company, nor did the evidence adduced raise that issue.   The case was not tried upon the theory that the Model Window Glass Company was solvent in so far as having ample property to pay its commercial debts and to sustain the value of its capital stock.   Its capital stock was $75,000, and the value of its plant was sufficient to obtain $135,000 insurance before it was destroyed by fire.   It had been rebuilt, and was practically new at the time of this transaction, and it may be reasonably inferred from the testimony of C. P. Zenor, Sr., that he expended a large amount of the insurance money in the reconstruction of the plant.   It had $6,761 of unpledged assets, and only owed about $16,000 when absorbed by the Magnolia Window Glass Company, in addition to the amount it owed the City National Bank, which was amply secured by glass and accounts receivable.   In fact there was a margin of $10,000 or $15,000 between the glass pledged and the debt it was pledged to secure.   With a little backing from Scoggin and Hill, the real estate and plant of the Model Window Glass Company was taken over on August 7, 1924, by the Magnolia Window Glass Company, that had no money of its own, and operated at a nice profit until the testimony was being taken in this case.   We arrive at that conclusion from Scoggin's statement that the

Magnolia Window Glass Company had sold $130,000 worth of glass, including what he and Hill had redeemed from the pledge to the bank, and had on hand glass worth $50,000, material worth $4,000 and accounts receivable of the value of $6,005, and only owed $2,100 to Hill, $600 to himself and $35,000 to the Merchants' National Bank, leaving a margin of $22,305, to say nothing of the value of the real estate and the plant.

The court's decree dissolving the corporations and appointing a receiver to wind up their affairs on the ground that they were insolvent was outside and beyond the issues joined or raised by the testimony. It was also erroneous because an individual creditor of a stockholder has no right to bring a suit to dissolve a corporation and wind up its affairs upon the ground of insolvency. That is a right conferred by our statutes on creditors and stockholders of a corporation. Sections 1820 and 1821, Crawford & Moses' Digest. None of the creditors or stockholders of either corporation are parties plaintiff to this suit; the only parties plaintiff to this suit are creditors of C. P. Zenor, Sr. Creditors of stockholders in a corporation do not stand in the shoes of a stockholder until they obtain a judgment against the stockholder, and levy upon his stock and buy it in at the sale. Then, and not until then, would they have a right, under §§ 1820 and 1821, to proceed to dissolve and wind up the affairs of an insolvent corporation. It is urged by appellees that §§ 4873 and 4874 of Crawford & Moses' Digest are authority for maintaining this suit as a creditors' bill. We do not think other persons mentioned in § 4873 embraced individual creditors of a stockholder in a corporation, but, if it does, we think appellees are estopped by transactions they had with Scoggin and Hill from maintaining a suit to set aside the sale of the real estate and plant of the Model Window Glass Company to the Magnolia Window Glass Company.

Again, appellees are clearly estopped from complaining of the sale of the real estate and plant of the Model Window Glass Company to the Magnolia Window Glass

Company. They had record notice in August, 1925, of the incorporation of the Magnolia Window Glass Company and the conveyance to it by the Model Window Glass Company of its real estate and plant for a nominal consideration of $10. The City National Bank thereafter, and prior to the institution of this suit, accepted the personal indorsement of J. S. Hill and A. H. Scoggin, two of the incorporators of the Magnolia Window Glass Company, on an indebtedness of over $33,000 which the Model Window Glass Company owed it, and released glass valued at $35,000 to $38,000, so that the Magnolia Window Glass Company would have glass to sell in the ordinary course of trade. The glass was moved back to the plant of the Model Window Glass Company, which had been taken over by the Magnolia Window Glass Company. J. B. McDonough collected a claim against the Model Window Glass Company on an acceptance signed by A. H. Scoggin and J. S. Hill, two of the incorporators of the Magnolia Window Glass Company. Scoggin and Hill tried to get him to take the acceptance of the Magnolia Window Glass Company in payment of the debt, and he refused to do so. We think the record notice and these transactions were sufficient to put appellees upon notice that the real estate and plant of the Model Window Glass Company was being taken over by the Magnolia Window Glass Company, and they are estopped, after securing these debts by obtaining the personal indorsement of A. H. Scoggin and J. S. Hill in furtherance of the transaction, to complain about the transfer of the real estate and plant. Both the City National Bank and McDonough must have known that Scoggin and Hill did not pay $37,500 into the treasury of the Magnolia Window Glass Company, and that Miller did not pay a like amount into the treasury of the corporation, else they would have insisted upon a payment of their debts in cash rather than obtain security for same by the indorsement of Scoggin and Hill. By inquiry they could readily have ascertained the real consideration agreed to be paid by Scoggin and Hill for the

transfer of the real estate and plant of the Model Window Glass Company to the Magnolia Window Glass Company.

We do not think the City National Bank is estopped to collect its claim against C. P. Zenor, Sr., because it allowed the maker of the notes, Zenor Bottling Company, through the solicitation of C. P. Zenor, Sr., to move its machinery out of the State after the fire. C. P. Zenor, Sr., moved it out of the State, and it certainly does not lie in his mouth to say that the favor it granted to his corporation had the effect of releasing him from making his indorsement to the bank good. The most that appellees were entitled to, under the allegations of the complaint and the testimony introduced in support thereof, was to follow the stock of C. P. Zenor, Sr., into the Magnolia Window Glass Company, and to subject it to the payment of their claims, provided that it was a voluntary gift to Miller, or provided it is held by Miller in trust for C. P. Zenor, Sr. The testimony has convinced us that the stock was issued to Miller without consideration and for the purpose of enabling the Magnolia Window Glass Company to get insurance on the plant; that Miller was not a *bona fide* purchaser thereof for a valuable consideration. The carelessness with which his note was handled indicates that its execution was a matter of form only, and that it was issued, if issued at all, as a subterfuge to cover up Zenor's property and stock and prevent his creditors from reaching it. Scoggin and Hill claim and insist that they held $31,500 of Miller's stock as collateral to secure them against any loss they might sustain by reason of indorsing the notes of the Model Window Glass Company to the City National Bank, and any loss they might sustain by reason of other indorsements made in the operation of the Magnolia Window Glass Company. The testimony reflects that they have received ample property to protect them against loss on account of all their indorsements, except to the Merchants' National Bank for $35,000, and that the glass on hand is more than sufficient to pay the debt the Magnolia Window Glass Company owes the Merchants' National Bank.

The assignment of $31,500 of the Miller stock in the Magnolia Window Glass Company was properly canceled by the court. The Zenor Bottle Company is not entitled to any judgment against the City National Bank on its cross-complaint. The City National Bank made an effort to renew the old insurance policies as they expired, and was unable to do so. The record reflects that it was impossible to get insurance on property in which C. P. Zenor, Sr., was interested.

On account of the errors indicated, the decree is reversed, in so far as it sets aside the sale of the real estate and plant of the Model Window Glass Company to the Magnolia Window Glass Company and dissolved them and appointed a receiver to wind up their affairs; and affirmed in so far as it sets aside the assignment of $31,500 of the stock carried in Miller's name for the Magnolia Window Glass Company, and impressed same with a lien to secure appellees' judgments.

The case is therefore remanded, with directions to the chancery court to order the stock sold, amounting to $31,500, carried in Miller's name in the Magnolia Window Glass Company, free from any claim of Scoggin and Hill, to satisfy appellees' judgments.