## CIRCUIT COURT OF FAIRFAX COUNTY

First Union National Bank

     v.

Allen Lorey Family
Limited Partnership

September 26, 1994

Case No. (Chancery) 135223

BY JUDGE THOMAS A. FORTKORT

This matter came before the Court on Respondent Allen Lorey Family Limited Partnership's demurrer to Complainant First Union National Bank of Virginia's Petition for Dissolution of the Partnership.

A money judgment was entered against Ryan Lorey and Betty Kay Allen, general partners of the Partnership, and a charging order was accordingly entered by this Court against the partnership interests of two judgment debtors. Now First Union seeks dissolution of the Partnership by virtue of the charging order. The demurrer contends that the charging order does not give this Court the authority to dissolve a limited partnership.

The issue presented is one upon which no Virginia Court has apparently ruled: whether a creditor of a partner may successfully petition the court for judicial dissolution of a limited partnership. Since Virginia has substantially adopted the Uniform Partnership Act (UPA) and the Uniform Limited Partnership Act (ULPA), this Court may profitably consider the decisions of other states which have adopted these acts.

At common law, the seizure of a partner's interest by a creditor dissolved the partnership. *Morrison v. Bladgett*, 8 N.H. 238, 29 Am. Dec. 653 (1836). The UPA changed the common law, and § 27 provides that a creditor may receive the partner's share of profits or distributions, but may not exercise the partner's other rights. Also, the partnership continues in

existence in these circumstances. This provision is embodied in Virginia Code § 50-27 and § 50-28.

In a general partnership, a partner may assign his interest to a creditor (§ 50-27), or a creditor may procure a charging order (§ 50-28), which "charges the interest of the debtor partner with payment of the unsatisfied amount . . . ." Section 50-28 places the creditor in the position of an assignee of the debtor partner's interest.

These comments refer to a general partnership; a limited partnership is a statutory creation which differs from the general partnership in that the limited partnership has, besides general partners, limited partners who do not participate in the management of the enterprise. They closely resemble shareholders of a corporation, in that they contribute capital and are generally liable only to the extent of their contribution.

It can be generally stated that the more public an enterprise, the more protected it is from dissolution. So, for example, in a corporation, the death or disability of an officer will not affect the viability of the corporation; a new officer is chosen to fill the vacancy. Likewise, a creditor of a shareholder normally cannot dissolve the corporation. "[A]n individual creditor of a stockholder has no right to bring a suit to dissolve a corporation and wind up its affairs on the grounds of insolvency." *A. H. Scroggin & Co. v. City National Bank*, 175 Ark. 461, 299 S.W. 1033 (1927).

On the other end of the business spectrum, a partnership is far less of a public entity. Therefore, the law provides that upon the death or disability of an individual partner, the partnership is dissolved (§ 50-31, death, § 50-32, disability, etc., upon decree of court). A creditor of a partner can be assigned the profits of the debtor partner. A partner can seek dissolution of the partnership for the causes listed in § 50-32. It is simpler to dissolve a partnership than it is to dissolve a corporation.

There are entities in between these extremes, which have both public and private characteristics. An insurance association has been characterized as quasi-public, and as such, "courts, unless authorized by statute, have no power to wind up their affairs at the instance of an individual." *State v. Robinson*, 42 S.W.2d 457 (1931). The rationale behind this public-private distinction is that the greater the public participation in a business, the greater the reluctance to allow that business' demise.

A limited partnership is just such a "quasi-public" entity, in that it consists of a number of limited partners who have nothing to do with operating the business, and general partners who actually manage the business.

This distinction is embodied in the Virginia statutes governing dissolution of a partnership. To reach a debtor partner's interest, there must issue a charging order. § 50-28. The charging order is a device introduced by the UPA, and it is instructive for the case presently before this Court to review the origin and effects of the charging order. Considering its origin, we find that:

> the charging order evolved as a way to divert the debtor partner's share of the partnership profits and surplus to his creditor without disrupting the ongoing partnership.

*Union Colony Bank v. United Bank*, 832 P.2d 1112 (Colo. App. 1992), citing Gose, "The Charging Order under the UPA," 28 Wash. L. Rev. 1 (1953).

Under the UPA, then, it became more difficult than at common law to dissolve a partnership. By statute, the partnership has been given protections closer to those guarding corporations, and for similar reasons:

> The charging order is the essential first step, and all further proceedings must occur under the supervision of the court, which may take all appropriate actions, including the appointment of a receiver if necessary, to protect the interests of the various parties. The reason for prohibiting a levy on partnership assets for debts of individual partners is to prevent disruption of the partnership business and the consequent injustice to other partners.

*Myrick v. Second Natl. Bank of Clearwater*, 335 So. 2d 343, 351 (Fla. Dist. Ct. App. 1976).

Following the *Myrick* reasoning, the court in *Atlantic Mobil Homes v. Lefever*, 481 So. 2d 1003 (Fla. Dist. Ct. App. 1986), stated that after a charging order issues, "the creditor cannot reach partnership assets but can only reach the debtor's share of profits from the partnership." 481 So. 2d at 1003.

Since the creditor only has the right to an assignment of the debtor partner's share of profits, not to overall partnership assets, and since only a partner may move the Court for dissolution of the partnership (§ 50-73.50), the beneficiary of a charging order does not have standing to move the Court for dissolution, except in a general partnership at will upon petitioning the Court. § 50-32(2)(b).

The only way the creditor can accede to partnership status in a limited partnership is by consent of the partners, or, to become a limited partner, with the assignor's leave if permitted in the partnership agreement. § 50-73.47.

Therefore, regarding the facts of the case before the Court, § 50-73.46 applies to the creditor, and he possesses "only the rights of an assignee of the partnership interest." Section 50-73.50 provides, in part, "[a]n assignment of a partnership interest does not dissolve a limited partnership or entitle the assignee to become or to exercise any rights of a partner." Section 50-73.50 allows "application by or for a *partner*" (emphasis added) for judicial dissolution.

While § 50-32 allows an assignee by virtue of a charging order to petition for dissolution where there was an at-will partnership, § 50-73.50 does not allow such a petition by an assignee, but *only* by or for a partner. The limited partnership dissolution statute is, then, more restrictive than the general partnership dissolution statute.

Moreover, the broader section is not consistent with the narrower limited partnership dissolution statute. There is a reason the General Assembly provided for more difficult dissolution of limited partnerships and a relatively easier process for dissolving the general partnership. This Court believes it was to provide greater protection to the limited partnership because of its quasi-public nature, as mentioned above.

The Court is confident that the dissolution provisions of the Limited Partnership Act supersede the broader provisions of the General Partnership Act. The Court finds convincing the reasoning of *Red Sail Easter Limited Partners, L.P. v. Radio City Music Hall Products, Inc.*, C.A. No. 12036 (Del. Ch. Sept. 29, 1992, revised Oct. 6, 1992). In that case the Delaware Court of Chancery interpreted similar provisions of Delaware law and concluded that the provision of a narrower dissolution statute for limited partnerships evinced a legislative intent that the broader provisions of the General Partnership statute not apply to limited partnerships.

Therefore, considering the nature of general and limited partnerships, the purpose and effect of the charging order, and the statutory language, it is the judgment of this Court that the demurrer be sustained.