LOUISE KNOX *vs.* JOSEPH BINKOSKI ET ALS.

Third Judicial District, New Haven, June Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

A verdict upon conflicting testimony will not be disturbed.

Whether evidence is or is not so remote in point of time as to be inadmissible, is a matter resting within the sound discretion of the trial judge, whose determination is not reversible except for a clear abuse of power.

It cannot be assumed that an answer to a hypothetical question to an expert must necessarily rest on assumptions of fact not involved in the question itself, in the absence of any disclosure to that effect in the record.

Under the law of Texas, a retention of possession by the vendor of personal property is merely prima facie proof that the sale is fraudulent as against his creditors, and casts upon the vendee the burden of proving a satisfactory explanation for such retention. While the good faith of the parties to such a sale in Texas would seem to be of itself a sufficient explanation of, and justification for, such retention, the charge of the court in the present case reviewed and *held* to have required not only good faith or honest intentions upon the part of each party to the sale, but that the transaction should have been in fact free from fraud of any kind,—which was certainly

Knox *v.* Binkoski.

all that a creditor of the Texas vendor could demand under the law of that State.

The defendant officer and his bondsmen sought to justify his alleged attachment, and subsequent sale on execution of three lions, part of a performing troupe of five which the plaintiff claimed to have purchased in Texas several years before, upon the ground that such purchase was fraudulent and that the lions at the time of their attachment were in the possession of the defendant named in the attachment writ, their original owner. The trial judge instructed the jury that if they should find that there had been a valid sale of the lions in Texas and that they were actually in possession of the plaintiff at the time the officer attached them, their verdict should be for the plaintiff. *Held* that in view of the context and of the manifest purpose of this part of the charge, it was not fairly open to the criticism that it should have included also an instruction to the effect that at the time of the attachment the plaintiff must have had a lawful right to the possession of the lions.

A bona fide purchase of personal property by one who takes its actual possession, carries with it the right of possession, in the absence of anything in the record to indicate that the vendor or anyone else had retained or acquired any such right.

The plaintiff presented a bill of sale drawn on May 7th, 1921, but dated January 18th, 1918, as evidence tending to show a sale in 1918. The trial court told the jury that so far as the issues of this case were concerned, the bill of sale was of no importance unless possession of the lions was taken under it before they were attached. *Held* that the defendants could not complain of this instruction.

It is indispensable to a valid attachment of personal property that the officer should take and retain its possession, either by removal or by placing a keeper in charge, or by some other act equally effective. Merely posting a notice of attachment on a cage of lions, without doing anything further, does not constitute a valid attachment or accomplish anything.

The plaintiff claimed damages not only for the value of the three lions converted by the defendant officer, but also for the breaking up of her performing band and her consequent loss of profits. *Held* that the charge of the trial court touching damages for conversion conformed to our rule, and that with respect to the instruction relating to loss of profits, the defendants certainly had no cause to complain.

An assignment of error should be distinct and complete, indicating definitely the mistake claimed; otherwise it does not merit the attention of this court.

It is not always true that the failure to contradict a statement respecting one's conduct when he has an opportunity to do so, admits the truth of the statement. The rule of professional etiquette which prevents a lawyer trying a case from testifying upon any material matter for his client unless impelled by imperative necessity, may

well explain his failure to contradict statements of witnesses respecting his conduct; and the jury may very properly be so instructed, if the other side attempts to make capital of his silence. The jury are never required to draw the inference that any testimony before them, whether contradicted or not, is true.

The defendants attacked the charge as a whole as being incorrect in perspective and inadequate to the situation. *Held* that the record afforded no ground or support for such criticisms; and that, on the contrary, all material questions of fact and the issues arising thereon were fairly and adequately covered by the instructions given the jury, whose decision manifestly depended upon their opinion of the veracity of the principal witnesses upon the one side and the other.

Argued June 5th—decided October 5th, 1923.

ACTION to recover damages for the alleged conversion of a den of lions, brought to the Superior Court in Fairfield County and tried to the jury before *Banks, J.;* verdict and judgment for the plaintiff for $1,540, and appeal by the defendants. *No error.*

In May, 1921, the defendant Joseph Binkoski was a deputy sheriff appointed by the defendant Thomas L. Reilly, Sheriff of New Haven County, and the defendant the American Surety Company was the surety on the sheriff's official bond payable to the State, which is required by statute.

The complaint alleges that on May 11th, 1921, the plaintiff was the owner and entitled to the immediate possession of three lions, which were part of a performing troupe of five lions then being exhibited by Adgie Castillo under a contract with the plaintiff; that on said day the defendant deputy sheriff attached the three lions, under a writ directed against Adgie Castillo, after repeated notice to him that the lions were the property of the plaintiff; that the plaintiff has demanded possession of the lions, but the deputy sheriff has refused to return them and has converted them; and that by reason of this wrongdoing, the plaintiff's troupe of performing lions was broken up, to the damage of the

plaintiff, who has been unable to secure satisfactory engagements for the remaining two lions. These allegations the defendants denied in their answer, but on the trial they admitted that the deputy sheriff had taken possession of the three lions under a writ of attachment in an action against Adgie Castillo and afterward sold them on execution of a judgment against her in that action; and they claimed that this attachment was in fact made on May 6th, 1921, although the deputy sheriff did not put a keeper in charge of the lions until May 11th, 1921, but left them in the place where they had been kept and exhibited by their owner until May 14th, 1921. The jury returned a verdict for the plaintiff for $1,540. The defendants' motion to set it aside, because it was contrary to the weight of evidence and inconsistent with the law stated in the charge of the court, was denied.

*Frank S. Bishop*, for the appellants (defendants).

*William Parker Seeley*, for the appellee (plaintiff).

BURPEE, J. The record discloses evidence upon which the jury could reasonably have found the verdict they rendered. The testimony of some of the witnesses relating to most material matters was flatly contradicted by the testimony of other witnesses. This was a case, as the trial court told the jury, in which the principal witnesses on one side or the other had testified falsely, and it was the duty of the jury to decide who had done so and which testimony they would believe, and it was for them only to estimate its weight. The conclusion they reached was not inconsistent with the law stated to them by the court. If they believed and gave full value to the testimony produced by the plaintiff, and followed the instructions they

received, they could not rationally have reached any other verdict. There was no error in denying the defendants' motion to set the verdict aside.

The defendants claim that the trial court erred in admitting certain evidence offered by the plaintiff to prove the value of the lions at the time of the attachment. She produced the original execution of the judgment rendered in the action in which they were seized by the deputy sheriff in May, 1921, and his return thereon showing that in February, 1922, he had sold the lions to the highest bidder at auction and had obtained $900 for them. The defendants objected to this evidence because the date of the sale was so remote from the date of the attachment, that the sum obtained at the sale was not admissible evidence of the value of the lions at the time they were taken by the deputy sheriff; and because it did not appear that the lions were in the same condition at the time of the sale as at the time of the attachment. Whether this evidence was so remote in point of time as to be irrelevant was a matter within the discretion of the trial judge; it was within his power either to receive or exclude it, as he might think would best promote justice in view of all the circumstances known to him. Error in its admission, therefore, is not well assigned upon that objection. *Barry* v. *McCollom*, 81 Conn. 293, 299, 70 Atl. 1035. The court admitted this evidence subject to subsequent evidence as to the condition of the lions on the two dates. Afterward the defendants supplied evidence of that kind, and although it might seem somewhat unsatisfactory, it was admissible to give the jury some means by which to fix the value of the lions.

To a hypothetical question put to an expert witness upon the value of lions, the defendants objected "on the ground that the witness' answer must nec-

essarily be based on certain assumptions of fact outside of the question." What those "assumptions of fact" are was not stated, and the record does not diclose that there were any on which the witness' answer "must necessarily be based." We find no error in the rulings on evidence.

If the defendants have been aggrieved by errors which they claim to have occurred in the trial of this action, their grievance must appear in the assigned reasons of appeal which they base upon specified parts of the trial court's charge to the jury. The plaintiff claimed to have proved that she bought the five lions which made up the performing troupe from Adgie Castillo in Texas in January, 1918, and first brought them into this State in April, 1921, and that she left them in the control of Adgie Castillo to be exhibited for the consideration of $10 a month, which she had received; and she admitted that she did not take actual possession of them before May 6th, 1921, the day on which the defendants claimed to have proved that they were attached by the deputy sheriff as the property of Adgie Castillo. Respecting the deductions legally to be drawn from these facts, the trial court instructed the jury that if the sale of the lions was made in Texas, the transaction and its consequences must be tested by the law of Texas, which it informed them is that "where there has been no change of possession and the seller retains the property in his possession, it is *prima facie* proof that the sale is fraudulent as against his creditors, and puts the burden of proof upon the purchaser of explaining the circumstances." This is unquestionably a sufficient statement of the law of Texas applicable to the facts. *Mills* v. *Walton*, 19 Tex. 271; Williston on Sales, § 396. Having in mind the facts which the plaintiff claimed to have proved and had admitted, the trial court directed

the jury, if they found that the sale was actually made in Texas, to "inquire whether, under all the circumstances of the sale, so far as the same are disclosed in the evidence, possession of the lions was retained by Adgie Castillo with fraudulent intent to deceive her creditors"; and whether her retention of possession "was fraudulent as to her creditors"; and if they found that her retention of possession was, "under the circumstances, without fraudulent intent, and that on May 11th, 1921, the plaintiff was still the owner of the lions, then the attachment of them as the property of Adgie Castillo was not justified." The defendants argue that in this language the impression was implied and conveyed to the jury that good faith of the parties to the sale would be of itself a sufficient explanation and justification of the retention of possession by the seller. While such would seem to be the conception of the law of Texas expressed in Williston on Sales, § 396, deduced from the cases cited thereunder, we do not think it is a rational or fair interpretation of the language of these parts of the charge when construed, as they should be, in their connection and relation with each other and applied to the evidence in this case. The plain purport of all these instructions is that the jury, weighing all the reasons given in explanation of the retention of possession by the seller, must be satisfied not only of the good faith or honest intentions of the seller and buyer, but that the transaction was in fact free from fraud of any kind. Certainly this construction of all these instructions clearly brings them well within the requirements of the law of Texas concerning this subject. The court had before called attention to the difference between this law and the law of this State, saying that here "retention of possession by the vendor is conclusive proof of fraud, and the property is sub-

ject to attachment by his creditors while in his possession, regardless of whether the sale was made in good faith or not." These instructions thus given were not harmful to the defendants.

The trial court charged the jury that if it should decide that there had been a sale of the lions to the plaintiff in Texas and that they were actually in the possession of the plaintiff when the deputy sheriff attached them, their verdict should be in favor of the plaintiff. The defendants criticize this statement because it does not contain an explicit statement that the jury should also find that the plaintiff at the time of the attachment had a lawful right to the possession of the lions. This criticism ignores the context and manifest purpose of this part of the charge. The court had just directed the jury to determine whether, before the attachment, there had been such a transfer of possession to the plaintiff as would satisfy the requirements of the law already explained to them; that is, that such transfer must be open, notorious, unequivocal, and to the exclusion of the vendor, having regard to the relations of the parties. Evidently actual possession of that kind would include the right of possession. For a general property in a personal chattel draws to it possession in law, and a person who has the general property in a personal chattel, although he never had the possession in fact, may maintain trover for the taking of it by a stranger. *Bulkley* v. *Dolbeare*, 7 Conn. * 232, * 235. The defendants had made no claim that there was any relation of the parties by virtue of which Adgie Castillo had acquired a right of possession of any kind, for they made a broad denial of a sale and transfer of possession from her to the plaintiff, and of any contract which interrupted her exclusive ownership. There was no evidence to be submitted to the jury to show

that the plaintiff, if she had once secured the possession of these animals, had restricted or impaired her right of possession, or that by lease or bailment or in any way Adgie Castillo had acquired an interest or term coupled with a right of possession. *Forbes* v. *Marsh*, 15 Conn. 384, 399. It had been shown only that the plaintiff had made some agreement with Adgie Castillo, after she had sold the lions, to exhibit them for the plaintiff; but by the defendants' objection, definite and complete information concerning the terms and effect of this agreement was excluded from the knowledge of the triers. The contested issue was not the mere right of possession, but the actual possession of this property, and upon this issue the plaintiff had produced evidence tending to prove that by certain positive acts she had taken and retained actual possession before the deputy sheriff made a legal attachment. For the guidance of the jury upon this issue and evidence, this part of the charge was not prejudicial to the defendants.

It was admitted that a formal bill of sale of the lions was drawn up and signed by Adgie Castillo on May 7th, 1921, but dated January 10th, 1918, and that it was recorded in the town clerk's office on May 9th, 1921. The plaintiff presented this paper as evidence tending to show that such a sale was made on January 10th, 1918. Referring to it, the court instructed the jury that so far as the issues in this case were concerned, this bill of sale had no effect upon the rights of the parties unless possession of the property was taken under it by the plaintiff; that the date of the bill of sale was of no importance unless the plaintiff took the lions into her possession before they were attached by the deputy sheriff. It is difficult to see how the defendants can reasonably complain of these instructions.

The plaintiff alleged and claimed to have proved
that the attachment by the deputy sheriff was made
on May 11th, 1921. The defendants claimed to have
proved that on May 6th, 1921, the deputy sheriff went
to the place in Fairfield County where Adgie Castillo
was exhibiting the lions, announced to her and to all
persons within hearing distance that he was attaching
the lions, and pasted a notice on the doors through the
backs of the cages stating that he, as deputy sheriff
of New Haven County, duly deputized to act in Fair-
field County, attached the within lions in a suit against
Adgie Castillo; that it was possible but difficult to
remove the lions from the place where they then were,
and he left them there; that he returned each day and
spent some time around the cages; that on May 7th,
1921, he found that the notices had been torn off from
the cages and destroyed, and the lions out of their
cages; and that on May 11th, 1921, he placed a keeper
in possession of the lions, and kept him continuously
in charge of them until May 14th, when he removed
them to East Haven, in New Haven County, where he
held them until he sold them on execution in February,
1922. The defendant deputy sheriff testified that
from May 6th to May 14th he left the lions in the
place where he found them because he expected some
one would pay the bill against Adgie Castillo and
settle the suit. It appeared that during this time Adgie
Castillo continued to exhibit the lions in the usual
manner. The original writ on which the attachment
was made was put in evidence. It bore the endorse-
ment of the sheriff of Fairfield County, attesting that
on May 11th, 1921, he deputized "Joseph Binkoski,
a deputy sheriff for New Haven County, to serve the
within writ, summons and complaint." And in his
return upon this writ deputy sheriff Binkoski asserted
that on that day, May 11th, 1921, in Bridgeport, he

attached three lions as the property of Adgie Castillo and took them into his possession. It was conceded that that attachment is the one set up in the complaint in this action. With this evidence before them, the court instructed the jury that the posting of the notices on the lions' cages on May 6th did not constitute an attachment; and that "in order to make a valid attachment the sheriff must take the property attached into his possession, either actually or constructively by placing a keeper in charge, or by some other act which unequivocally placed the property in his possession"; and that "the attachment took effect from the time when the sheriff took these lions into his possession; and the placing of them in the custody of a keeper constituted such taking of them into his possession." The appellant contends that this is not a correct statement of the law applicable to the facts of the situation because it was difficult to remove the lions. But manifestly that difficulty was not serious, for it was admitted it did not prevent or so far as appears hinder, their removal when the sheriff was ready to remove them. The defendants also argue that the attachment was begun by the posting of the notices on the cages on May 6th, and perfected by the placing of a keeper in charge of the lions on May 11th, and therefore it should be regarded as effective from May 6th; or, in their own words, that the deputy sheriff on May 6th, "was so far in possession of the lions that the plaintiff could not take possession." But by the mere act of posting the notice on the cages, with the announcement to Adgie Castillo and the bystanders that he was attaching the lions, he did not take possession or accomplish anything. The notices were torn off and destroyed the next day, and the lions were out of the cages and were exhibited thereafter as usual by the person whom the defendants

asserted to be their owner. After May 6th, the sheriff did not attempt to maintain actual or constructive possession of the animals until he placed a keeper in charge on May 11th. Until that day he did not exercise due vigilance to prevent the property from going out of his control. *Mills* v. *Camp*, 14 Conn. * 219, * 226. If he had really meant to take possession on May 6th, he evidently abandoned possession on May 7th, when he suffered the lions to go back into the custody of Adgie Castillo. "It is of the very essence of a lien by attachment, that possession be taken and held; and when this is relinquished, there is a termination of the lien, and the general owner is remitted to his property unencumbered. . . . The plaintiff [the attaching officer], then, having abandoned the possession of the goods attached, the lien upon them was gone, and they were out of the custody of the law, when taken and carried away by the defendant." *Taintor* v. *Williams*, 7 Conn. 271, 273. That possession be taken and held by the officer is in all cases indispensable, and when his possession is relinquished, there is a termination of the attachment lien. *Mills* v. *Camp*, 14 Conn. * 219, * 221, * 226. In the circumstances indicated by the evidence in this case, the charge of the trial court was correct in law, adapted to the facts, and sufficient for the jury's guidance to a legal conclusion.

The plaintiff claimed damages for the conversion of the lions and special damages for breaking up her troupe of five performing lions. The defendants did not in their pleadings challenge her right to recover either kind of damages. On the trial it was admitted that the defendant sheriff finally seized and took away three of the five lions, and the plaintiff presented evidence tending to show that thereby the troupe was broken up and thereafter she derived no profit from it or from the two lions left in her possession. The

court directed attention to the plaintiff's claims to damages, and to the evidence as to the value of lions trained to act together in a troupe, and to the costs of these five animals and what three were sold for on execution; and thereupon directed the jury to determine the actual value of the three attached on the day of the attachment. These instructions conform to the rule of damages approved by this court in cases of conversion. *Seymour* v. *Ives*, 46 Conn. 109, 115; *Healey* v. *Flammia*, 96 Conn. 233, 237, 113 Atl. 449. We see in them no error of which the defendants may justly complain. They seem rather to belittle the claim to damages for the breaking up of the troupe and the consequent loss of the income which the plaintiff would have received from their performances together, which are described in the complaint as "satisfactory bookings or engagements." For this injury she would have been entitled to recover in this action if she had produced sufficient evidence to sustain this claim. 17 Corpus Juris, 878, § 184; 38 Cyc. 2100. The plaintiff rather than the defendants might have cause to complain of this part of the charge.

In the seventeenth assignment of error the defendants set out merely the following sentence of the charge: "If, because of recognition of this rule, Mr. Seeley was deterred from going upon the stand as a witness and giving his version, you are not bound to take the statements as to what he said and did as true because they are not contradicted by him, but are entitled to consider his failure to contradict them as explained by his very proper adherence to the rule of professional conduct." This statement of the assignment is not distinct and complete, and does not indicate with definiteness the mistake claimed. Hence it does not merit the attention of this court. General Statutes, § 5837;

*Water Commissioners* v. *Robbins*, 82 Conn. 623, 641, 74 Atl. 938; *Lawton* v. *Herrick*, 83 Conn. 417, 429, 76 Atl. 986. It is only a meagre excerpt from the charge, in which the defendants argue in their brief that the court instructed the jury that "a rule of etiquette nullifies a rule of evidence." But we are compelled to resort to the context in the charge to discover the real meaning of the sentence and the character of the error assigned. Therein we find that in the immediately preceding sentences, the trial court called the jury's attention to the fact that certain witnesses for the defendants had testified concerning statements or conduct of the plaintiff's attorney, Mr. Seeley, and then had said to them: "Ordinarily, when one fails to contradict a statement made regarding his conduct although he has had an opportunity to do so, the inference may fairly be drawn that the statement is true. A salutary rule of professional etiquette prevents a lawyer who is trying a case from taking the stand as a witness for his client upon any material matter unless imperative necessity impels." Then follows the sentence quoted in this assignment of error. Evidently it is neither fair nor rational to claim that in these instructions the trial court informed the jury that any "rule of etiquette nullifies a rule of evidence." Neither is it true, as the defendants say in their brief, that "evidence and logic require the jury to infer that one who fails to contradict a statement regarding his conduct when he has an opportunity to do so admits the truth of the statement." There may be circumstances and conditions in which a sense of honor, or of duty respecting the rights of and consequences to others, or obligations binding upon the conscience, or other restraints which influence the conduct of men, will excuse or satisfactorily explain silence or refusal to contradict testimony apparently adverse or dubious; or it may be that the testimony

is so self-contradictory or evidently untrustworthy, or so indefinite or unimportant, that an express contradiction may reasonably be deemed unnecessary. The jury are never required to draw the inference that any testimony before them, whether contradicted or uncontradicted, is true. *Hall* v. *Tice,* 86 Conn. 684, 689, 86 Atl. 560; *Dean* v. *Connecticut Tobacco Corporation,* 88 Conn. 619, 92 Atl. 408. It is familiar law that they shall examine any evidence in the light of all the circumstances in which it appears, and shall not only weigh the evidence produced, but consider the lack of evidence which might have been produced and the reasons, if any, for the lack. In the present case, among other things which it was the duty of the jury to consider was the failure of the plaintiff's attorney, who was conducting the trial, to make himself a witness and contradict certain statements apparently prejudicial to his client, and whether in fact he was restrained by an established rule of professional ethics; and if so, whether his failure was excused or explained by his respect for that rule; and finally whether, lacking contradiction, the testimony should be accepted as true. *Gorman* v. *Fitts,* 80 Conn. 531, 536, 69 Atl. 357. Respecting this matter this court (BALDWIN, C. J.) has said: "It was unquestionably proper to inform the jury that there was an established rule which, under ordinary circumstances, rendered it improper for an attorney engaged in the trial of a cause to testify during the trial to a material point; . . . as well as to instruct them that testimony was not necessarily to be accepted as true because it was uncontradicted, but might often be judged to good purpose according as the facts stated did or did not square with acknowledged standards of human conduct." *Gorman* v. *Fitts,* 80 Conn. 531, 537, 69 Atl. 357; *Nanos* v. *Harrison,* 97 Conn. 530, 117 Atl. 803; *Ropkins* v. *Frascatore,* 97 Conn. 708, 712, 118 Atl.

129. From these principles the trial court did not depart in the present case.

The eighteenth and nineteenth assignments of error cover the whole charge in a general attack. It is described as incorrect in perspective and inadequate, and in the brief condemned as "unfortunate in analysis and statement," because it over-emphasized the matter of transfer of title and under-emphasized the interest of the public in the transfer of personal property. We discover in the record no support nor ground for such an attack.

We have examined in succession the assignments of error which are directed against specified parts of the charge, and have found them insufficient. These and other parts of the charge contain correct and adequate explanations of the law relating to all material questions of fact and issues, and fair and ample statements of the claims actually made by each party during the trial. The decisive question was whether the jury would accept and follow to a conclusion the evidence produced by the plaintiff or that produced by the defendants. Their decision of this question depended upon their opinion of the veracity of the principal witnesses. Having settled that question, the instructions of the court unquestionably guided them to a correct result. Therefore we need not inquire whether the theory on which the charge proceeded could in all respects be maintained. *Wilson* v. *Griswold*, 80 Conn. 14, 19, 66 Atl. 783.

There is no error.

In this opinion the other judges concurred.