GREENE COUNTY, ARKANSAS *v.* J. WILL HICKS
ET AL

5-5305                                    458 S. W. 2d 152

Opinion delivered October 5, 1970

*Kirsch, Cathey & Brown,* for appellant.

*Branch, Adair & Thompson,* for appellee.

LYLE BROWN, Justice. In the trial of an eminent domain proceeding in which the appellees, landown-

ers, were awarded $1,500, Greene County, condemnor and appellant, contended that special benefits would offset any damages to appellees. To support that contention the appellant offered to prove that the then uncompleted project called for an asphalt surface as opposed to the long existing gravel road. After hearing an offer of proof in chambers the trial court described as uncertain and speculative the proposed establishment of a hard surfaced road and excluded the evidence. The single point for reversal concerns that ruling.

State Highway 141 traverses a farm owned by appellees. The district maintenance supervisor, with the verbal approval of the district engineer, proposed to widen and improve the road in that vicinity if Greene County would obtain an additional twenty feet on each side of the highway. Greene County concurred and the county court entered an order of condemnation. The landowners filed a claim for $1,793.60 and it was disallowed in toto. In defending against the claim at the trial on appeal to circuit court, Greene County sought to establish that any damages from the taking of the 1.5 acres would be completely offset when the project was completed and the old road was replaced with a wider, better drained, and asphalt surfaced highway. We turn now to the facts surrounding the vital issue of whether it was shown to be reasonably certain that the plans of the supervisor to eventually install the hard surface would be realized.

The improvement project was not contract construction; it was conceived by the State's district maintenance supervisor and verbally approved by his district engineer. It was being funded out of the maintenance budget of the district and the work was being performed by the maintenance crews. The undertaking was not submitted to the State Highway Commission or its director for approval. The maintenance superintendent testified that it was customary to handle minor improvement projects of this nature at the district level, that is, without seeking approval from the State's chief engineer, the State director, or the highway commission.

No plans and specifications in the usual sense were filed, nor were any ever drafted. A sketch map was filed in the county court and utilized at the trial in circuit court. It purported to be nothing more than a map showing the exact location of the proposed new right-of-way lines and the names of the affected property owners. It made no reference to drainage improvements or to the type of finishing material. The sole commitment for an asphalt finish was the verbal assurance of the district maintenance superintendent that such a finish was by him intended and that sufficient funds were in the budget to carry out his plans.

The trial in circuit court was held in late November 1969. It appears that the project was begun in the summer of 1969 and had progressed to the point of completing the grading and the spreading of base materials consisting of gravel and adhesive soil. The district superintendent explained that the type of asphalting could not be done after November 15 because of colder temperatures; therefore the project was closed down until after the following April 1, the beginning of the standard asphalting season. He insisted that the project would be resumed some five months after the trial and that the asphalt surface would be then constructed. It was conceded that emergencies could arise on other roads in the district which might necessitate the exhaustion of maintenance funds for the fiscal year. It was also shown that a decision of either the State's director of highways or the highway commission could alter the superintendent's plan for asphalt finish.

From the testimony we have summarized the trial court concluded that the evidence was too uncertain as to whether asphalt surfacing would be laid; consequently, the trial court said, the jury could not consider it as a factor in deciding the allegation of offsetting benefits. The jury was instructed to consider only the improvements then in place in resolving the issue of benefits. We cannot say the trial court abused its discretion.

The burden of proving enhancement in value by reason of the improvements was on appellant. *McMahan*

v. *Carroll County,* 238 Ark. 812, 384 S. W. 2d 488 (1964). All appellant offered in that connection was the assurance of the maintenance superintendent that he intended to install asphalt surfacing, beginning some six months after the trial; and he stated that in antici- pation of the final result he had caused more gravel to be distributed than was necessary for an ordinary gravel surface. Neither the phrase "asphalt surface" nor "hard surface" appears in the pleadings or the exhibits. The maintenance superintendent was fourth in the chain of command—the highway commission, the state director, the district engineer, and lastly the local super- intendent. The latter's unrecorded plans could be ad- mittedly changed by either one of his superiors.

A case from another jurisdiction which supports our conclusion is *Zook* v. *State Highway Commission,* 131 P. 2d 652 (Kan. 1943). The road cut through the farm of the landowner. A highway engineer testified that a stock pass would be installed to connect the divided lands. On the basis of that testimony the commission sought an instruction on special offsetting benefits. The appellate court sustained the refusal of the instruction, stating as one of its reasons that the highway commis- sion had not committed itself to the building of the cattle pass. "A finding pursuant to such an instruction, should one have been given, would have been based necessarily on conjecture by the jury."

Another case of interest is *Village of Ridgewood* v. *Sreel Investment Corp.,* 145 A. 2d 306 (N. J. 1958). The corporation's property was condemned by the appellant village for use as a public parking lot "or for other public uses or purposes." The village's engineer drafted a suggested parking layout and testified that such a fa- cility would be of peculiar benefit to the remainder of the corporation's property. It was admitted that the plat, which was permitted to be introduced, reflected no official action on the part of the village council. The appellate court condemned the introduction of the plat, saying:

To admit promissory representations of the condemnor's intention might well deprive a landowner of damages to which he is justly entitled on the mere expression of an intention to do something which might never be done.

The rule that anticipated benefits cannot be considered unless they are reasonably certain to accrue is treated in 13 ALR 3d 1149, § 13 [b]. Also see 27 Am. Jur. 2d Eminent Domain, § 358.

Affirmed.