CHARLES SCHNIER *v.* HOWARD S. IVES, HIGHWAY COMMISSIONER

HOUSE, C. J., THIM, SHAPIRO, LOISELLE and RUBINOW, JS.

Argued October 12, 1971—decided January 19, 1972

*Clement J. Kichuk,* assistant attorney general, with whom, on the brief, were *Robert K. Killian,* attorney general, and *Jack Rubin,* assistant attorney general, for the appellant (defendant).

*Robert L. Trowbridge,* with whom, on the brief, was *Alfred F. Wechsler,* for the appellee (plaintiff).

SHAPIRO, J. The defendant has appealed from a judgment, rendered by a referee exercising the powers of a judge of the Superior Court, reassessing the damages sustained by the plaintiff in the taking by the defendant of the plaintiff's property for highway purposes.

The finding, which is not subject to correction in any material respect, discloses the following facts: On December 17, 1968, the plaintiff became the

owner of 24.8 acres of vacant land situated in the town of Bloomfield, which he purchased for $325,000 pursuant to an agreement executed in April, 1967, with the prior owners. When he entered into that agreement which was conditioned on obtaining a zone change, the entire tract of land was zoned R-20 which restricted its use to the construction thereon of private one-family dwellings. Prior to the vesting of title in the plaintiff, seventeen acres of the tract were rezoned RB-20 which permitted construction of business and professional buildings. In February, 1969, the plaintiff employed an architect to prepare plans for development of the land involved here. During February and March, 1969, the architect prepared an overall rendering of the complex to be developed, which included a large office building. Subsequent to the above mentioned zone change, construction drawings of such a building were prepared. This was one of the few sites in the area on which the erection of an office building was permitted. During May, 1969, the plaintiff had the loam stripped from the land, a cellar excavated and low spots filled. The highest and best use of the plaintiff's land was for the construction of office buildings, and at the time of the taking, June 25, 1969, the plaintiff was implementing his plan to put the land to office building use. On June 25, 1969, the defendant, acting within his statutory authority, found the land necessary for purposes connected with the construction of the highway commonly known as interstate route 291, hereinafter called I-291, and filed with the clerk of the Superior Court for Hartford County an appraisal of damages in the amount of $357,100.

The Connecticut General Life Insurance Company, hereinafter called Connecticut General, is a large landowner in the general area of the plaintiff's land.

On June 27, 1969, it purchased 10.52 acres, zoned R-20 in front and RB-20 in the rear, from Margaret E. Seger for $250,000 or $23,764 per acre. This property, located one mile more distant from Hartford than the plaintiff's land, had a 235-foot frontage on Bloomfield Avenue and was acquired to improve access to other land already owned by Connecticut General. On July 11, 1969, Connecticut General purchased 2.5 acres from Nicholas J. Russo and Rosemary T. Russo for $200,000. One-half acre, zoned R-20, contained a dwelling house and had a fair market value of $100,000 while the rear two acres, zoned RB-20, had a fair market value of $100,000.

In 1964, David Chase, Frank Beckerman and Harry L. Gampel purchased for $67,000 approximately thirty acres of land adjoining the land involved here, each becoming the owner of an undivided one-third interest in the tract. On May 31, 1969, Chase and Connecticut General entered into a bond for deed relating to the purchase of the interests of Beckerman and Gampel in the thirty-acre tract for $800,000, of which Connecticut General was to pay $600,000 and Chase $200,000. On January 6, 1970, title was transferred by Beckerman and Gampel to Chase and Connecticut General pursuant to the bond for deed, enabling Chase to own a 50 percent interest in the entire thirty-acre tract. Connecticut General paid $600,000 for its 50 percent interest, which is equivalent to $40,000 per acre. Of this land, zoned R-20 and not located on a corner, approximately 60 to 65 percent was designated a channel encroachment area while between 40 to 45 percent of the plaintiff's land was so designated. No building may be erected within a channel encroachment area but a parking area is permitted.

Connecticut General was interested in the land involved in the case at bar and in 1958 had directed a real estate agent to inquire as to its availability. Being adjacent to the land in which Connecticut General had purchased its interest at $40,000 an acre gave the land involved in this case comparable value for business use.

All the plans designating the location of I-291 which had been released by the state of Connecticut, insofar as they pertained to the land involved here, were subject to change. The price paid for the Beckerman–Gampel interest in the thirty-acre tract was affected by the proposed location of I-291 in the area. This highway location was not a major influence in the participation by Connecticut General in the purchase of the Beckerman–Gampel interests. Two of the plaintiff's appraisers, whose qualifications were conceded by the defendant, utilizing the Seger, Russo and Beckerman–Gampel sales, valued the land involved here at $1,240,000 while one valued it at $1,116,000. One of the defendant's appraisers, relying in part on the Beckerman–Gampel and Seger sales, valued the land involved here at $496,000 while a second appraiser valued it at $483,600. The referee is familiar with the location of the plaintiff's land and has viewed it.

On these facts the referee reached the following conclusions: At the time of the taking, the plaintiff was implementing his plan to put his land to its best use, namely, for the construction of an office building; that the Seger, Russo and Beckerman–Gampel transactions, involving properties either adjoining or in close proximity to the plaintiff's land, are probative of the fair market value of the latter; that the transaction reflected in the bond for deed which involved Beckerman–Gampel and Chase–

Connecticut General was the result of arm's length negotiations between willing buyers and willing sellers and established a selling price of $40,000 per acre; that in comparison with the plaintiff's land, the land involved in the Beckerman–Gampel transaction had inferior zoning and did not have a corner location; that the proposed location of I-291 was a factor in establishing the selling price of the Beckerman–Gampel land and while the location of the highway in the area affected its value, it was not a controlling or predominant factor in setting the value; that the location of I-291 did not increase the value of the Beckerman–Gampel interest in the land involved in their transaction with Chase–Connecticut General by over 20 to 25 percent; that the plaintiff's land, being superior in zoning and location, was worth approximately 20 percent more than the land involved in the Beckerman–Gampel transaction; that the value of the plaintiff's land, using the Beckerman–Gampel sale as a comparable, and with the aforementioned 20 to 25 percent and the 20 percent factors, gives it a value of $36,000 per acre or $892,000; that the Russo sale established a price of $50,000 per acre, was not influenced by the location of I-291 and was established after arm's length negotiations between a willing buyer and a willing seller; that the Seger sale produced a price of $23,764 per acre and was inferior to the plaintiff's land in that it was not a corner lot, had limited frontage and its zoning was not as favorable; that, taking into consideration the Beckerman–Gampel, Russo and Seger transactions, making allowances where appropriate for the influence of I-291 and adjustment for the superior location and zoning of the plaintiff's property, its fair market value on June 25, 1969, was $875,000.

The defendant assigns error in some of the conclusions reached by the referee. These conclusions must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Branford Sewer Authority* v. *Williams*, 159 Conn. 421, 425, 270 A.2d 546; *Brauer* v. *Freccia*, 159 Conn. 289, 293, 268 A.2d 645.

The main thrust of the defendant's appeal lies in his claim that there was harmful error in the method adopted by the referee in determining the fair market value of the plaintiff's land on June 25, 1969, the date of the taking. In making that claim, he contends that the referee erred in overruling his claim of law that the sale of the land involved here to the plaintiff should be considered as the best evidence of its value on the day of taking and in completely disregarding and overlooking the significance of this sale which preceded the condemnation date by six months. The price at which a parcel of land was bought is evidence competent to show its market value at the time of its taking by eminent domain, so long as that price is the result of a voluntary sale and not so remote in time as to be irrelevant. 27 Am. Jur. 2d, Eminent Domain, § 428 and cases cited in footnote 7. It should be observed that in the case at bar the referee did not exclude evidence of the sale to the plaintiff and, in fact, made findings regarding the sale. He did not, however, employ it in any method used by him to determine valuation. He was not required to do this, since the trier arrives at his own conclusion as to the value of land by weighing the opinion of the appraisers, the claims of the parties in the light of all the circumstances in evidence bearing on value and his own general knowledge of the elements going to establish value, includ-

ing his own view of the property. *Gentile* v. *Ives,* 159 Conn. 443, 451, 270 A.2d 680; *Brothers, Inc.* v. *Ansonia Redevelopment Agency,* 158 Conn. 37, 43, 255 A.2d 836; *Bennett* v. *New Haven Redevelopment Agency,* 148 Conn. 513, 516, 172 A.2d 612; *Moss* v. *New Haven Redevelopment Agency,* 146 Conn. 421, 425, 151 A.2d 693. No single method of valuation was controlling, and the referee was entitled to select the most appropriate one under the facts as he found them. *Brothers, Inc.* v. *Ansonia Redevelopment Agency,* supra, 45; *Stanley Works* v. *New Britain Redevelopment Agency,* 155 Conn. 86, 99, 230 A.2d 9; *Research Associates, Inc.* v. *New Haven Redevelopment Agency,* 152 Conn. 137, 142, 204 A.2d 833.

The defendant also claims that the sale contemplated by the agreement of May 31, 1969, between Beckerman–Gampel and Chase–Connecticut General, which was consummated by deed on January 6, 1970, almost seven months after June 25, 1969, the date of condemnation of the land involved here, could not be used as a comparable sale in valuing the latter. The premise that this transaction, consummated subsequent to the taking, cannot be considered is without merit. It is interesting to note, as we discussed the issue earlier, that the defendant there urged that the referee should have utilized the actual price that the plaintiff paid for this property, a transaction that was completed over six months prior to the date of the condemnation.

Evidence of the Beckerman–Gampel sale could be found to be clearly relevant, the sale having been made sufficiently close in point of time to afford a fair comparison. Certainly, that transaction was not so far removed, timewise, from the appropriation of the land as to make a comparison unjust or

impossible as a matter of law. Whether a transaction is sufficiently close in point of time to afford a fair comparison is a matter resting largely in the discretion of the trier. *Knox* v. *Binkoski,* 99 Conn. 582, 586, 122 A. 400; 27 Am. Jur. 2d, Eminent Domain, § 429, and cases cited; see 4 Nichols, Eminent Domain (3d Ed.) § 12-311 (3). In the case at bar we cannot say that in this regard the referee abused his discretion.

The defendant assigns error in that the price paid for the Beckerman–Gampel conveyance contains an increment created by knowledge and reliance on the public project embodied in the proposed construction of I-291, and thus, as a matter of law, should not have been used in the referee's determination of the value of the land involved here. It should be kept in mind that the referee did find that the Beckerman–Gampel property interest was enhanced in value by the proposed location of I-291.

In anticipation of the construction of a public improvement, the value of the land in the vicinity of the proposed improvement frequently rises before the actual taking. The generally prevailing view is that the owner of the land taken in eminent domain is not entitled to recover an increase or enhancement in the value of his land due to the proposed improvement. 27 Am. Jur. 2d, Eminent Domain, § 283. The general rule is that any enhancement in value which is brought about in anticipation and by reason of a proposed improvement is to be excluded in determining the market value of the land. 4 Nichols, op. cit. § 12.3151 and see page 12-293, footnote 1, for cases cited. In giving effect to this rule, the United States Supreme Court sustained a trial court's ruling that an opinion witness should exclude from his estimate of the fair market value of property being con-

demned, any increment in value due to the government project. *United States* v. *Miller,* 317 U.S. 369, 377, 63 S. Ct. 276, 87 L. Ed. 336. The court stated (p. 375): "[S]trict adherence to the criterion of market value may involve inclusion of elements which, though they affect such value, must in fairness be eliminated in a condemnation case . . . . These elements must be disregarded by the fact finding body in arriving at a 'fair' market value."

"[A] landowner [should not] be entitled to indirectly increase the value of his land being taken by comparing it with a sale of other land the value of which has been enhanced by the public improvement contemplated. *Denver* v. *Smith,* 152 Colo. 227, 381 P.2d 269; *Redfield* v. *Iowa State Highway Commission,* 252 Iowa 1256, 110 N.W.2d 397; *Zogby* v. *State,* 53 Misc. 2d 740, 279 N.Y.S.2d 665; *Latham Holding Co.* v. *State,* 16 N.Y.2d 41, 209 N.E.2d 542." *Board of County Commissioners* v. *Vail Associates, Ltd.,* 171 Colo. 381, 391, 468 P.2d 842.

The landowner's evidence of a comparative sale must be accompanied by evidence of the increment of value due to the influence of the contemplated public improvement in order to be considered by a trier who finds such a sale is so influenced. *United States* v. *Miller,* supra. Here, however, the plaintiff chose to offer no evidence as to the extent of the influence of the contemplated public improvement. Clearly, the defendant had no duty to offer evidence as to the extent of such influence in order to allow the plaintiff's evidence to be utilized in such a case.

The referee chose to believe the defendant's witness who testified that the proposed location of I-291 was a factor in establishing the value of the land interest in the Beckerman–Gampel transaction. He then attempted to utilize it as relevant evidence of a

comparable sale by subtracting from the sum paid for it an allowance for the enhancement of its value due to the influence of I-291. He concluded that it did not increase the value by over 20 to 25 percent and adjusted the value of this comparable land by that percentage.

The defendant claims that the referee erred in concluding that the location of I-291 did not increase the value of the Beckerman–Gampel interest in the thirty-acre tract by over 20 to 25 percent. The referee, in his memorandum of decision, states that he assumed that factor. In his ultimate conclusion as to the fair market value on June 25, 1969, he took into consideration the Seger, Russo and Beckerman–Gampel transactions and made "adjustment for the superior location and zoning of the subject property" and made "allowances where appropriate for the influence of I-291." Within these "allowances," the 20 to 25 percent factor is inextricably woven and cannot be separated from other factors which could properly be considered by the referee in arriving at his conclusion of value of the land involved here. There is nothing in the finding to indicate the source from which the trier derived this percentage factor. Accordingly, the defendant must prevail on this assignment of error unless the factor assumed by the referee was ascertainable from a "view" taken by him of the plaintiff's land. This court said in *Gentile* v. *Ives,* 159 Conn. 443, 452, 270 A.2d 680: " 'We have consistently held that the visual observations made by the trier on a visit to the property are as much evidence as the evidence presented for his consideration by the witnesses under oath. They are in fact supplemental evidence.' *Houston* v. *Highway Commissioner,* 152 Conn. 557, 558, 210 A.2d 176." We fail to see, however, how a view of the plain-

tiff's land could produce evidence of a percentage factor, as used here, resulting from the influence of the I-291 highway construction. We must conclude that the referee was in error in reaching the conclusion regarding the percentage factor for highway influence which is attacked by the defendant.

The other assignments of error require no discussion.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion HOUSE, C. J., and LOISELLE, J., concurred.

RUBINOW, J. (dissenting). On the issue of the value of the land taken, the majority opinion holds that the referee should not have considered the evidence concerning the sale price of the Beckerman–Gampel parcel. The opinion does not, however, find error in the referee's admitting that evidence, and holds that that evidence "could be found to be clearly relevant."

The consequence of the majority opinion is that this admitted evidence, which the referee could properly find "clearly relevant," has no more probative force than if it had been excluded. This anomalous result is reached on the ground that, if the price paid in a comparable sale has been influenced by a proposed public improvement, the landowner's evidence about the comparable sale "must be accompanied" by evidence proving the amount of the "increment of value" resulting from that improvement; and that if that evidence of the comparable sale is not so "accompanied," the referee must disregard that evidence of the comparable sale.

This holding of the majority opinion is not supported by the case cited as authority for the holding;

and this holding departs from the sound general rule that the condemnor, not the landowner, has the burden of proving facts that would reduce the landowner's damages. For these reasons, I respectfully dissent.

## I

The sole case cited in the majority opinion as authority for its holding is *United States* v. *Miller,* 317 U.S. 369, 63 S. Ct. 276, 87 L. Ed. 336. The pertinent facts there were that, in the course of a jury trial to determine the value of land taken for a public improvement, the court, on objection by the condemnor (p. 372), ruled that questions calling for an opinion as to the market value of the land taken had to be framed so as to exclude any increased value attributable to the public improvement. The Supreme Court of the United States recognized the rule that a landowner cannot recover for enhanced value attributable to a public improvement, and said, in discussing the trial court's ruling (p. 380): "They [the landowners] allege that, in California courts, an opinion witness must state his valuation as at the date of taking and the opposing party is at liberty, upon cross-examination, to elicit the facts on which the witness relied in arriving at that value. Counsel insist that if the Government was entitled to have the witnesses disregard any increment of value due to the Government's intention to construct the project, it could have developed, on crossexamination, how far the inclusion of any such element had affected the value stated. We think that probably under California procedure this would have been the better and more appropriate way to develop the basis of the witnesses' opinions. We do not feel, however, that if there was a disregard of the local

practice in this aspect the error is substantial or worked injury to the . . . [landowners]."

Even if this quotation is interpreted as approving the trial court's ruling in the *Miller* case, the decision in that case is inapplicable as a precedent in the case at bar for three reasons: (1) The trial court's ruling concerned opinion evidence on the valuation of the taken parcel, not factual evidence of the sale price of a comparable parcel. (2) The trial court's ruling was made in response to an objection by the condemnor to the form of a question; no such objection was made in this case. (3) The trial court's ruling specified the conditions under which valuation-opinion would be admitted into evidence; the ruling did not purport to limit the use of evidence after it had been admitted.

## II

As the above quotation from the *Miller* case demonstrates, the issue of enhancement may be raised by means other than by objecting to the form of a question. Thus, the decision in the *Miller* case makes reference to the "California procedure," under which cross-examination by the condemnor may be used to determine the extent to which value attributable to enhancement has been included in a valuation. Another method of raising the issue is suggested by *Manning* v. *Redevelopment Agency of Newport,* 103 R.I. 371, 238 A.2d 378, where the court held that if evidence of a claimed comparable sale is objected to on the ground that, by reason of enhancement, there is no comparability, the issue of comparability may be treated as a preliminary question of fact, and the party offering the evidence should have an opportunity to establish comparability.

Regardless, however, of the method by which the issue of public-improvement value-enhancement is raised, the purpose of raising the issue is to attempt to cause the trier to find a "net market value," i.e., market value less enhancement, for either the parcel taken or the comparable parcel, and to have the damages awarded on the basis of the "net market value" instead of the market value. Hence, to the extent that the trier finds that the market value of the taken parcel or the sale price of the comparable parcel has been enhanced by the public improvement, the trier will reduce that market value or that sale price when he determines the landowner's damages. In short, with respect to the purpose of the proof, there is no difference between proof of enhancement and proof of any other fact that will tend to reduce the amount of a condemnation award.

The majority opinion does not state on what theory the landowner should reasonably be expected to introduce evidence for the purpose of reducing the amount that will be awarded to him. "While the issues in . . . [condemnation] cases are limited, such cases are nonetheless adversary in character, and manifestly, the . . . [landowner] was under no duty to produce evidence for the sole benefit of the . . . [condemnor]." *Long* v. *Director of Highways,* 44 Ohio Op. 2d 426, 427, 240 N.E.2d 569. "Although no . . . cases [in this jurisdiction] have been called to our attention on the point, the general rule requires the owner to maintain the burden of proving by a preponderance of the evidence his right to damage and the amount thereof, while the burden is on the condemnor to show matters which tend to reduce or mitigate the damage." *Arnold* v. *Maine State Highway Commission,* 283 A.2d 655, 658 (Me.). "Even in those jurisdictions where the general rule

[i.e., that the burden of proof of damages is on the landowner] prevails, the burden is on the condemnor to produce evidence which minimizes the value or damages." 5 Nichols, Eminent Domain (3d Ed.) § 18.5, pp. 18-259—18-262. For cases in other jurisdictions applying the general rule, see *Green County v. Hicks,* 249 Ark. 69, 458 S.W.2d 152; *Twenty Club v. State,* 167 Neb. 37, 91 N.W.2d 64; *State Highway Commission v. Thomas,* 2 N.C. App. 679, 163 S.E.2d 649; *State Highway Commission v. Rollins,* 471 P.2d 324 (Wyo.). *Clark v. Cox,* 134 Conn. 226, 235, 56 A.2d 512, held that the condemnor has the burden of proving conditions that take a condemnation case out of the general rule that the condemnor is liable for interest from the date of taking to the date of judgment. Although that holding is limited to allocating the burden of proving mitigation of that portion of damages represented by the interest, the court there recognized that condemnation proceedings are "adversary proceedings" (p. 234) and that the condemnor may have the burden of proving facts that would cause the award to be made on a basis other than the general rule of market value plus interest.

### III

In cases involving the issue of the market value of real property, comparable sales have hitherto been considered preferred evidence. "In other words, the best test is ordinarily that of market sales." *Sibley v. Middlefield,* 143 Conn. 100, 107, 120 A.2d 77.

Neither in the authorities nor in the practice of valuation litigation is there any precedent for the limitation placed in this case on the probative value of this "best-test" evidence. The burden of proving the extent of enhancement in the price of a com-

parable sale should be on the party who benefits from that proof, i.e., the condemnor. If the condemnor has that burden, any error of the referee in this case in finding the extent of enhancement without evidence is harmless error, since the effect of the error is to benefit the condemnor by deducting the amount of the enhancement from the sale price of the comparable parcel. That deducting process makes the "net market value" of the comparable parcel less than the price paid for it, and it is that "net market value," rather than the sale price, that the referee used in arriving at his decision as to the market value of the taken parcel.

In this opinion THIM, J., concurred.