[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Kalig Satari, appeals from a "Notice of Condemnation and Assessment of Damages" filed by the defendant Commissioner of Transportation pursuant to §§ 13a-73 and 13a-73 (e) of the general statutes.
The State acquired portions of three parcels owned by the plaintiff. One of the parcels was 6.46 acres more or less, and the plaintiff is not pursuing any claim for the taking from that parcel for which he was awarded $5000. The two parcels which are the subject of this appeal consist of two contiguous parcels totaling approximately 130.8 acres. The property is located on Route 31 in the town of Coventry. It has approximately 1358' of frontage on the westerly side of Route 31. The purpose of the taking was to make improvements to Route 31 including improving the drainage there. Surface water naturally flows from the east side of the highway to the west side because of the generally gentle, downward sloping from east to west. The State acquired 1920 square feet, more or less, plus certain drainage rights of way, slope easements, and an easement to drain into a undefined area as indicated by disbursement arrows on the taking map. Additional temporary rights were taken for sedimentation control, to construct a driveway and to reset a perpendicular stone wall, however these additional rights terminated upon completion of the construction and did not impact the value of the property.
The State awarded $8000 for the 130 acre parcel which is the subject of the dispute. Henceforth any references to the property will be to the 130 acre parcel.
In the course of the hearing testimony was received from appraisers for both parties, from the plaintiffs professional engineer, the State's professional engineer, the State's expert in the field of drainage and hydraulics and the State's expert in the field of geo-technical engineering. CT Page 58
In addition to the trial testimony and documentary exhibits, the Court viewed the property in the company of counsel for both parties.
It is the duty of the Court to make its own independent determination of fair compensation based on the evidence presented, a viewing of the premises, and its own general knowledge. Commissioner of Transportationv. Farina, Superior Court, Judicial District of Ansonia/Milford at Milford No. CV 98-63707, July 16, 2001, (Curran, J.); McDermott v. NewHaven Redevelopment Agency, 184 Conn. 444 (1981).
The plaintiff has the burden of proof, using the civil standard of fair preponderance. Hall v. Weston, 167 Conn. 49 (1974); Schnier v. Ives,162 Conn. 171, 185 (1972), although the State, once the burden has been met, may have the burden of showing matters in mitigation of the damages. Schnier v. Ives, supra, p. 185.
The usual measure of damages where there is a partial taking is the difference between the market value of the whole tract before the taking and the market value of what remained of it thereafter. Lynch v. WestHartford, 167 Conn. 67, 73 (1974); Minicucci v. Commissioner ofTransportation, 211 Conn. 382, 384 (1989). The same rule applies whether the partial taking is the taking of a fee-simple interest or an easement interest, and the amount of the difference is the measure of damages. NewYork. N. H. and H.R. Co. v. New Haven, 81 Conn. 581, 583 (1909),D'Addario v. Commissioner of Transportation, 180 Conn. 355, 365 (1980). Fair market value has been defined as the price a willing seller and a willing buyer would agree upon following fair armslength negotiations taking into account the highest and best use of the property: Tandet v.Urban Redevelopment Commission, 179 Conn. 293, 298, (1979).
In this case, there is no dispute that the highest and best use of the property in question is for residential development.
The plaintiff claims the damage to his property caused by the five perpetual drainage rights of way easements, the easements to slope and the removal of a stone wall along the easterly border of his property resulted in damages of $211000.
The plaintiffs appraiser, Peter R. Marsele, ascribed $88688, to a taking of a field-stone wall which ran along the frontage of the property. He arrived at that number by using the Marshall and Swift cost calculation to arrive at the cost to replace a hypothetical stone wall totaling 1100 feet in length, with an average height of 3 feet and an average depth of 2.5 feet, and then depreciating that amount by 50% for the supposed condition of the wall prior to the taking. Marsele, CT Page 59 however, never viewed the property prior to the taking and relied on information given him by Mr. Satan, the owner. (Satari was not offered as a witness at trial).
There was conflicting evidence as to the state of the so-called wall. The State's witnesses described it as the remnants of an ancient wall and essentially rubble. Donald Aubrey, a professional engineer who has been doing sub-division engineering for Satari since 1986 testified that most of the frontage held a stone wall (albeit poorly maintained), and he testified he saw rocks being removed on more than one occasion, to be used by the State to build a stone wall on the easterly side of Route 31, on property not owned by Satari.
The taking maps do delineate walls running parallel to Route 31 on Sartani's property, however, that does not assist in determining the condition of the wall, (i.e. rubble, poorly maintained, or 50%). The Court cannot conclude, as the plaintiff would have it, that because a perpendicular stone wall approximately ten feet long which was substantially intact, did exist, that is evidence of there being a wall running along Route 31. In fact, the State undertook to reset the ten foot perpendicular wall, and it is more likely that it would likewise have done so if there was more than the ruble from an ancient wall running parallel to the highway.
In addition, credible testimony was offered that state employees specifically surveyed the property prior to the taking and while there were the ruble-like remnants of an old wall, even that was not continuous (testimony of Felix Rosado, project engineer). Further, photographs were taken to memorialize the condition of the so-called wall (Exhibits A2 through A16) and they substantiate that there were scattered remnants of an ancient stone wall, that they were not continuous remains, and any impact to the valuation of the property (if indeed any existed) was de minimus. Even assuming that the so-called wall was within the boundaries of the taking map (and that is itself questionable) the Court does not ascribe any ascertainable loss to the plaintiff.
The plaintiffs remaining claim is premised on the impact of increased water flow onto his property from the installation of drainage pipes running from the easterly side of Route 31 to his property on the westerly side. The fee taking of 1920 square feet is a minor consideration, even according to the plaintiffs appraiser. The issue of valuation turns rather, upon the impact of the taking upon the remainder of the land.
Peter Marsele, the plaintiffs appraiser placed a value on the property before the taking at $582000 and the value after the taking of $371000, CT Page 60 for a diminution in value of $211000. of that amount, he attributed $88688 to the taking of the stone wall and the balance of $122312 to the impact of the drainage project to Satan's property.
As previously found, the so-called stone wall was, in reality practically non-existent and the Court does not award damages for that claim.
Prior to the taking there were no recorded drainage easements, nor was there evidence that the State had drainage easements by prescription. In fact, however, prior to the taking there were drainage pipes running from east to west onto the plaintiffs property. This highway improvement project replaced the pre-existing eight pipes with seven new pipes at the same locations as the preexisting pipes, with the exception that there was one less pipe than before and one of the new pipes was upgraded from a 24" diameter pipe to a 36" diameter pipe. The remaining replacement pipes were 18" in diameter both before and after the taking.
The plaintiff argues that the valuation should not merely be based on any increased flow of water as a result of the taking and reconstruction of the highway, but because there were no earlier recorded easements, this taking should be based on the impact the now recorded easements will have.
There was no evidence as to how long the property east of Route 31 was draining onto the plaintiffs side, however, the plaintiff purchased the property in 1980 and there was no indication any drains were installed thereafter until the present work was done. Obviously, water was being drained from east to west for many years prior to the taking and prior to Satan's ownership.
Since it appears that the property along Route 31 was being drained in the same manner from some time prior to 1980, the Court will consider (just as the appraisers and other experts have done) the impact to the plaintiffs property resulting from the taking from the previously existing conditions.
This evaluation comes down to a determination of whether there will be an increased water flow, an increased flow rate, and/or an increase to the drainage area as a result of any increase either in flow amount or flow rate.
On these issues, the State presented evidence from Yolanda Antoniak, a licensed professional engineer, with the Connecticut Department of Transportation, qualified as an expert in hydraulics and drainage. She did an analysis using contour maps, construction plans, and drainage CT Page 61 maps. She determined that drainage patterns were the same before and after the taking and that there would be no significant increase in the drainage flow (a maximum of 1.5%). She mathematically calculated the rate of flow and any change in volume. Her testimony of no significant impact in either volume or rate of flow is found to be reasonable, logical and credible.
The State also provided testimony from Felix Rosado, a Department of Transportation engineer with 28 years of experience and presently a supervising engineer for the Bridges and Highways section. He established that the water which would be draining onto the plaintiffs property would disperse in the same pattern as it did before the construction work and that the undefined drainage area as shown on the taking map would be the same as it was previously. Further, the undefined drainage area is in a designated wetlands which extends generally approximately 400' from Route 31 into Satan's property. From the testimony, any water draining into this area would not expand the pre-existing drainage area, and, indeed, would probably be absorbed into the ground within a distance of 200'. Additional testimony was received from Leo Fontaine, also a Department of Transportation engineer with expertise in the area of geo-technical engineering. He was a supervising engineer on this project and has expertise in soils, their permeability and properties. He testified that boring samples were taken, and monitoring wells installed in June 1994 and October 1994. Based on his tests and studies, the worst case scenario was that this project would deposit 1700 gallons of additional water per month over the 130 acres-or-one one-hundredths of one per cent of an increase. He testified that, based on his studies, no additional ground water would intrude onto Satari's land and any increase in the amount of surface water would be insignificant.
The plaintiff offered the testimony of Donald Aubrey, a licensed professional engineer, "licensed in Connecticut since 1975. Mr. Aubrey has done sub-division work for Satari since 1986 and is familiar with the area in question.
He testified that the drainage improvements along Route 31 would significantly impact drainage flow onto Satari's property. These improvements include raising the elevation of Route 31, the reduction of water retention capacity on the east side of the highway, and the improvement of swales on the east side (which will, he stated, facilitate flow to the drainage pipes). The Court finds the detailed evaluations of the State's witnesses, which included soil sampling, monitor wells and calculations based on specific data, to be more persuasive on the question of impact to the plaintiffs property as a result of this taking. The Court concludes the plaintiff has failed to prove a significant impact. CT Page 62
Turning to the testimony of the appraisers, based on the foregoing findings the valuation of the plaintiffs appraiser is inappropriate. He estimated a 25% devaluation based on the stone walls, drainage easements, slope and other easements. Most of his findings were taken from Donald Aubrey's report and his estimate of the impact these factors would likely have on a buyer in the marketplace. He assumed that, based on Aubrey's report, there may be an extension of the wetland areas (emphasis added) but, as found, the persuasive evidence does not support that opinion.
The State's appraiser, Amy Martinez, also a state certified appraiser (as was Mr. Marsele), used a different approach than did Mr. Marsele. She determined, based on a sales comparison approach, that if the 130 acres were subdivided, the pre-taking value of a one acre lot would be $50000, or $1.15 per square foot. She then determined the total square footage of the defined easements (4981 square feet) and multiplied that by the $1.15 per square foot. She then awarded 95% of that value for the taking or $8000 (for the 130 acre piece). Although she made no award for the undefined drainage area, that was not inappropriate since the persuasive evidence is that there would be no significant impact to that drainage area after the taking and reconstruction of the highway and its drainage.
If Martinez had, in fact, utilized the methodology of the plaintiff's appraiser and applied that methodology to the same square footage, it would have resulted in an award of $2400 for that same square footage. That is so because Marsele valuated the property as raw land at $3800 per acre or .872 cents per square foot. Because there was no significant impact to the property beyond the relatively small defined taking portion of the property, the amount of the award was reasonable and appropriate. The plaintiff has not established otherwise.
In sum, the Court finds that the value of the property taken by the condemnation (out of the 130 acres) was $8000. Further, that the value of the remainder of the 130 acres was not impacted or diminished by the taking or by the drainage improvement work done thereafter.
The $5000 awarded in connection with the 6.46 acre parcel is not in dispute, and the plaintiff is not entitled to severance damages in excess of the $8000 awarded for the partial taking of the 130 acre parcel.
Accordingly, judgment may enter for the defendant Commissioner of Transportation.
Klaczak, J. CT Page 63