[No. 8357.]

BOARD OF CONTROL OF STATE HOME V. MULERTZ.

1. JUVENILE COURT—*Jurisdiction*—*Dependent Children.* When a child has been declared regularly dependent, and committed to the State Home, a petition of the parent that the child be restored to his custody, not showing any change in conditions, nor that for any reason the State Home is no longer

a proper guardian, docs not call into action the jurisdiction of the court over infants generally, nor confer upon the court authority to change the guardianship. (475, 476.)

The court is without authority to entertain such petition, or even to remove the child from the State Home to a place of temporary detention, e. g., the Detention Home School, erected pursuant to Rev. Stat. secs. 591, 598. (476.)

2. —— *Power Over Judgment.* The Juvenile Court is a court of record. (Rev. Stat. sec. 1591). The power which it may exercise over a judgment is limited, either by the common law to the term at which the judgment is rendered, or by the code (sec. 81), to six months, or, in exceptional cases, to one year, succeeding the rendition of the judgment.

An order vacating a judgment entered more than two years previously is without effect. (473.)

3. PROCESS—*Service on Convict.* A convict incarcerated in the penitentiary, is not, by reason of such detention, exonerated from such service of the process of the courts as honest people are subject to.

A judgment upon such service, in a court of competent jurisdiction is regular and of full effect. (472.)

4. PRACTICE—*Order Nunc Pro Tunc,* may be entered to supply the omission of an order actually made on a previous day, and inadvertently omitted from the record. An order which in fact never was made cannot be entered *nunc pro tunc.* (473.)

5. COURTS—*Governed by the Law.* Whoever exercises power in a government of the people must observe the rules prescribed by public authoritiy for the particular case. Courts are only instruments of government, and the powers entrusted to them must be exercised according to the rules and ordinances governing the administration of justice. (475.)

The relation of remedies to rights is fundamental, and connot be disregarded at will. (476.)

6. STATE HOME FOR DEPENDENT CHILDREN—*Board of Control.* The custody and control of a child lawfully committed to the State Home is in the Board of Control of that institution. The board becomes its guardian, and are invested with power and discretion to restore it to its parents, or otherwise terminate the guardianship, or continue it. When no error of law, or unfaithful act, on their part, appears, their action is to be accepted as final. (476.)

7. —— *Review of Proceedings.* If for any reason it is desired to question or review the action of the board, some appropriate and formal proceeding must be adopted. The result is not to be accomplished by a reopening of the child's commitment, where the matter has passed beyond the jurisdiction of the committing court. (476.)

*Error to Denver Juvenile Court.* Hon. BEN B. LINDSEY, Judge.

Messrs. DINES, DINES & HOLME, Messrs. BARNETT & CAMPBELL, and Mr. KENNETH B. TOWNSEND, for plaintiff in error.

Mr. JOHN HORNE CHILES, for defendant in error.

BEN. B. LINDSEY, *Amicus Curiae.*

Mr. JUSTICE WHITE delivered the opinion of the court.

In a proceeding regularly pending, and at issue, in the Juvenile Court of the City and County of Denver, Catherine Mulertz was, on the 7th day of September, 1909, found and declared to be a dependent child, and was sent to "The State Home" for dependent and neglected children, the decree reciting that her "future custody shall be subject to the statute of the state establishing said State Home and providing for the disposition of children in its care." Sub. V, ch. 24, R. S. 1908. The term of the court at which this order was entered expired January 11, 1910. §1592, R. S. 1908. At and prior to the time of the entry of the aforesaid order, the child was the adopted daughter of another Catherine Mulertz, also known as Fitch, and who had been duly served with the notice of the proceedings, but did not appear therein. The petition showed, in addition to the facts of dependency, that Mrs. Mulertz had been convicted of a felony, and was in the penitentiary. July 17, 1912, Mrs. Mulertz filed in the case a petition in which she alleged that she was absent from the City and County of Denver and "was under duress," on the date of the hearing at which the child was adjudged a dependent, and was "unable to appear" and resist the prayer of the petition therein, and prayed that the order and decree of commitment be set aside and further hearing be had on the original petition. November 18, 1912, the motion was sustained and a rehearing on the original petition ordered. Thereafter, and on January 9, 1913, Mrs. Mulertz presented a motion and petition in the case and

prayed for an order, *nunc pro tunc,* that she be permitted
to file the same as of the April Term, 1910, of the court.
This petition asked that an order be entered in the case
changing the guardianship of the child from the State Home
for dependent children to herself.  She also presented an
affidavit in support of the petition in which she alleged that
when the proceedings in dependency were had, she was
confined in the state penitentiary, undergoing a sentence
for the commission of a felony; that upon her release from
the penitentiary, in March, 1910, she appeared in the Juven-
ile Court and verbally asked that the order committing said
child to the State Home be set aside, and that the custody of
the child be restored to her; that she was thereupon advised
by the court to petition the Board of Control of the State
Home to surrender the child to her, which she thereafter
did, and the matter was, at some time not designated, finally
heard and denied; that thereupon she again verbally re-
quested the Juvenile Court to restore the custody of the child
to her; that because she believed from the attitude and ex-
pression of the individual members of the Board of Control
of the State Home that the child would be returned to her
by final action of the board, she had not presented a written
petition to the court to be restored to the guardianship of
such child; that she was not guilty of the offense for the
commission of which she had been convicted, and that the
child was not dependent, but alleged no fact as to why the
custody of the child should be changed.  September 15, 1913,
the court entered an order granting Mrs. Mulertz leave to
file her petition for a rehearing "as of a date within six
months of her release from the penitentiary," and that "the
petition for rehearing is granted as prayed," and ordered
that said case be continued for trial on the issue "as to the
rights of the said respondent, Catherine Mulertz, to the cus-
tody of said child."  On the 19th day of November, 1913, a
jury was selected and before the introduction of any evidence

the Board of Control of the State Home refused to partici-
pate in the trial, whereupon the court ordered the District
Attorney, in behalf of the state, to contest the issues with
Mrs. Mulertz. After many days the jury, on November 28,
1913, returned a verdict that the child, Catherine Mulertz,
was a dependent child, and recommended, however, that it
be placed in the custody of Mrs. Mulertz. A motion for a
new trial was thereupon filed and subsequently denied.
April 15, 1914, the court again entered an order declaring
the child, Catherine Mulertz, to be "a dependent child," and
that it be taken from the State Home for dependent children,
and placed in "the home of Mr. and Mrs. J. P. Wright at
the "Detention Home School" until a suitable family home
can be obtained for the child, or until the further order of
this court." The Board of Control of the State Home de-
clined to surrender the custody of the child, and brought
the controversy here by writ of error and applied for a
*supersedeas,* which was allowed, and the child has since re-
mained in the State Home.

If it be a fact that Mrs. Mulertz was a convict in the
state penitentiary when service of process was had upon
her, or if she was thereafter, by reason of such imprison-
ment, prevented from personally appearing at the hearing
at which the child was adjudged a dependent, the service
of process and the trial were, nevertheless, regular. Her
situation did not relieve her of the necessity of heeding the
process of the courts, or from responding to the necessities
of public justice. Chitty's Crim. Law, Vol. 1, pp. 725, 726;
*Ramsden v. McDonald,* 1 Wilson's Rep., 217; *Cannon v.
Windson,* 1 Hous. Rep. (Del.), 143; *Platner v. Sherwood,*
6 John. Chan. Rep., 118, 127, 130.

The rule in this regard is stated in 9 Cyc., p. 875, as
follows: "In the absence of any statutory provision on the
subject, process may be served personally on a convict con-
fined in prison, * * * ." With no legislative pronounce-

ment to that effect in this state, the situation of Mrs. Mulertz neither rendered her immune to the civil process of the courts, nor conferred upon her privileges to which honest citizens are not entitled. The judgment establishing the dependency of the child was not procured by fraud, or by irregular or improper conduct of the successful party; and the court had jurisdiction of the subject matter and of the persons whose rights were determined. The court pronouncing the judgment is a court of record,—§1591 R. S. 1908,— and its power over the judgment, after the expiration of the term at which it was rendered, is governed either by the common law or the Code of Civil Procedure. By the common law its jurisdiction in the premises was ended upon the expiration of the term at which the judgment was entered, unless during that term a motion or some pleading was interposed to set aside, modify or correct it, or an order entered continuing the case for such purpose. And if the Code applies, the court's power in the premises ended, with like exceptions, upon the expiration of six months, or, in exceptional cases, one year, after the end of the term at which the judgment was entered. §81 Code of Civil Procedure, R. S. 1908; *People v. Dist. Court*, 33 Colo. 405; *Elder v. Richmond G. & S. M. Co.*, 58 Fed. 536.

As both the common law and code provisions are definite and unequivocal, it is clear that the action of the court in setting aside its judgment rendered at a term of court which expired two and a half years before, was not only erroneous but also of no force and effect whatever, unless jurisdiction of the case was retained by virture of the attempted *nunc pro tunc* order of January 9, 1913. An order may be entered, *nunc pro tunc*, to make a record of what was previously done by the court and omitted from entry; but where the court has never made an order which it might or ought to have made, it cannot be entered *nunc pro tunc*. The court's power in this regard is not to supply something

that might or should have been done, but to supply an omission in the record of action really had and omitted thru inadvertence or mistake. There was not, during the term of court at which the judgment was entered or subsequent thereto, within the time allowed by statute, or by the common law, any motion filed in the case, or order made therein that would constitute the basis for the alleged *nunc pro tunc* entry. The motion requesting the entry, or rather the affidavit in support thereof, shows that while Mrs. Mulertz appeared in the Juvenile Court sometime in March, 1910, and orally requested that she be restored to the guardianship of the child, and the order committing the child to the State Home be set aside; she neither filed a motion in that regard, nor was granted permission to do so, nor did the court make any order in the premises, but advised her to proceed before the Board of Control of the State Home if she desired to have the custody of the child restored to her; and that she did so proceed, and upon final hearing her application in that regard was denied by such board. Moreover, Mrs. Mulertz never asked leave to file the petition for rehearing, *nunc pro tunc*, but only asked that an order be entered, *nunc pro tunc*, giving her leave to file a petition for the restoration to her of the custody and control of the child. The court, however, not only awarded her the relief she requested but also directed that the petition for rehearing, which was then in no wise before the court, be entered as of the date within the supposed jurisdiction of the court, and that its prayer be granted. This was clearly erroneous. As far as the case at bar is concerned the Juvenile Court had performed all its duty in the particular case when the original judgment was entered, and no action having been taken by the party considering herself aggrieved thereby, within the time allowed by law to change or modify that judgment, the controversy was at an end. *McKercher v. Green*, 13 Colo. App. 270. In the motions, petitions and affidavits in support thereof, pre-

sented and heard subsequent to the decree of dependency and commitment of the child, there were no facts alleged, or attempt to show, that the condition of petitioner was so changed that a guardian was no longer necessary for the child, or that the State Home was in any sense an improper guardian, and the power of the court to change the guardianship, and its jurisdiction over infants generally, is, therefore, not involved. In fact the action attempted was simply to review or reverse the original judgment upon the same state of facts which existed at the time such judgment was rendered, and not to procure a new judgment or order in regard to the child, based upon a different state of facts. Therefore, when the petition for rehearing was filed the court was without jurisdiction to entertain it, Courts are only instruments of government, and the powers entrusted to them must be exercised according to the rules and ordinances made and adopted for practical purposes. Under the facts of this case the duty of the Juvenile Court was to dismiss the petition for a rehearing, and to deny the request for an order, *nunc pro tunc*, permitting Mrs. Mulertz to file in the case a petition to restore to her the guardianship of the child. The former should have been dismissed, because the original decree had passed beyond the court's control; and the latter should have been denied, because that which is embodied in the motion to be entered *nunc pro tunc* had not previously been done by the court, as well as upon the further ground that the control and custody of the child, after the entry of the order of committment, was in the Board of Control of the State Home. §§572, 573, 574, 575 and 579, R. S. 1908. "The State Home" for dependent and neglected children is an agency of the state, and, upon commitment of the child to its care, became its guardian, and the Board of Control thereof was invested with the power and discretion to restore the child to its parent, or to otherwise terminate the guardianship, or to continue the same

as provided by law; and when no error of law, neglect or unfaithfulness on the part of the members of the Board of Control is alleged or shown, their action must be accepted as disposing of the matter. The principle controlling in this regard is declared and applied in *In Re Wares*, 161 Mass. 70. Moreover, when the action of the Board of Control of the State Home is questioned in such matters, it must be thru some appropriate proceeding instituted for the purpose, and not by reopening a cause which has passed beyond the jurisdiction of the court that tried and determined the issues. We cannot give our assent to the contention of the trial judge, who appears as *amicus curiae* herein, and that of counsel for defendant in error, that "the matter of procedure cuts but little, if any, figure." The relation of remedies to rights is fundamental and can not be disregarded at will. Whosoever exercises power in a government of the people, for the people, and by the people, whether the power be executive, legislative or judicial, must do so in substantial compliance with the rules prescribed, or his action in the premises is unlawful.

But, apart from this, it is certain, beyond peradventure of doubt, that the trial court abused its discretion in taking this child from the State Home and placing it temporarily in the custody of those in charge of the "Detention Home School," which is a "room" or "house" provided by the City and County of Denver, in compliance with the command of the legislature, and designed for the temporary detention and control of delinquent children. §§591 and 598, R. S. 1908. It is not conceivable that the best interests of the child would be subserved by removing it from the institution created and designed by the legislature as a home for neglected and dependent children, and from the influence exerted by the men and women constituting the board of control thereof, against whose characters nothing derogatory is charged, and placing it in charge of those in control of an

institution designed primarily for the temporary detention of delinquent children. We must assume, in the absence of a showing to the contrary, in an appropriate suit instituted for that purpose, that the Board of Control of the State Home, has and will, in relation to this child, properly discharge its duties and discretion under the statute. In any event, the action of the court, of which complaint is here made, was without authority, and the cause is, therefore, remanded, and the trial court directed to vacate its orders entered in the case subsequent to the original judgment of dependency and commitment.

*Reversed and remanded with directions.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE BAILEY concur.