**UNION COLONY BANK, a Colorado Banking Corporation, Plaintiff–Appellant,**

v.

**UNITED BANK OF GREELEY NATIONAL ASSOCIATION, Defendant–Appellee.**

**No. 91CA0434.**

Colorado Court of Appeals, Div. II.

May 14, 1992.

Bedingfield & Associates, P.C., Jeffrey T. Bedingfield, Norman W. Nash, and John W. Kinkade, Greeley, for plaintiff-appellant.

Brown & Bernardini, P.C., Gregory A. Jamieson, and Brian J. Bernardini, Denver, for defendant-appellee.

Opinion by Judge SMITH.

Plaintiff, Union Colony Bank (Union Colony), appeals the trial court's charging order apportioning the interest of judgment debtor, Stanley Davis (Davis), in a partnership known as Wilshire Land Company (Wilshire) between Union Colony and United Bank of Greeley (United Bank). We reverse.

Union Colony and United Bank are unsecured judgment creditors of Davis, and this appeal arises out of their conflicting claims of priority to Davis' partnership interest in Wilshire. The facts are not in dispute.

United Bank and Union Colony sought judgments in separate lawsuits against Davis. On April 12, 1990, United Bank obtained a judgment for approximately $119,800. In an attempt to satisfy this judgment, in late April and, again, in early May, United Bank served a writ of garnishment on Wilshire. Wilshire answered both writs, denying that it held any funds which belonged to Davis. It further averred that

Davis held a 6.16% interest in the partnership.

On May 30, United Bank filed a motion, requesting that the court charge Davis' partnership interest in Wilshire with the amount of the still unsatisfied judgment. United Bank further requested that the order be made effective as of April 30, 1990, the date the first writ of garnishment had been served on Wilshire.

In the meantime, Union Colony had obtained its judgment of $48,400 against Davis on May 22, 1990. And, simultaneously with the judgment, the bank sought, and upon waiver by debtor of the 15–day requirement, obtained a charging order against Davis' partnership interest in Wilshire.

In June 1990, the trial court entered an order in response to United Bank's motion, charging Davis' partnership interest in Wilshire. The court entered this order *nunc pro tunc* as of April 30, 1990.

Wilshire, because of the apparent inconsistencies between the two charging orders, filed a motion under C.R.C.P. 22 and 24 offering to deposit with the court any money it received attributable to Davis' partnership interest and requesting the court for leave to intervene and to consolidate the two lawsuits.

The trial court granted Wilshire's motion for intervention and consolidated the two lawsuits for the sole purpose of determining the priority of the charging orders. Ultimately, the trial court ruled that United Bank and Union Colony should share pro rata in each of Davis' future partnership distributions in accordance with the respective amounts of their judgments until such judgments were satisfied.

## I.

■ Union Colony contends that the trial court erred in pro-rating Davis' partnership interests between the two judgment creditors. We agree.

The charging orders were issued pursuant to § 7–60–128, C.R.S. (1986 Repl.Vol. 3A) of the Uniform Partnership Act (UPA). This statute provides in relevant part:

On due application to a court of competent jurisdiction by any judgment creditor of a partner, *the court* which entered the judgment, order, or decree, or any other court, *may charge the interest of the debtor partner with payment of the unsatisfied amount of the judgment with interest thereon;* and may then or later appoint a receiver of his share of the profits and of any other money due or to fall due to him in respect of the partnership and make all other orders, directions, accounts, and inquiries which the debtor partner might have made, or which the circumstances of the case may require. (emphasis added)

The parties agree that neither this statute nor, indeed, any other provision of the UPA detail the priorities to be given to multiple judgment creditors who obtain charging orders directed to the same partnership interest. Union Colony asserts that the method of determining priority of charging orders should be consistent with the method of determining priority among judgment creditors who seek execution on other kinds of personal property. United Bank argues that equity supports the trial court's decision to apportion any proceeds from Davis' partnership interest between the two creditors.

The priority of competing charging orders is a question of first impression in Colorado. For the reasons stated below, we adopt the position asserted by Union Colony.

The charging order represents, essentially, an outgrowth of the more disruptive post-judgment remedy of execution against partnership assets to satisfy a personal debt of a partner. In short, the common law had no procedure to seize a partner's interest in the partnership, that is, his intangible share in the business of the firm or, as later defined under the UPA, his distributive share of the partnership's profits and surplus. *See* § 7–60–126, C.R.S. (1986 Repl.Vol. 3A). In order to reach this valuable interest, tangible partnership property was seized and sold, disrupting the partnership and forcing it into dissolution.

These consequences were unfair to the non-debtor partners. And, because it impaired intangible aspects of the partnership such as good will, the consequences were, in addition, harmful to the value of the partnership interest which the creditor sought to reach. Thus, the charging order evolved as a way to divert the debtor partner's share of the partnership profits and surplus to his creditor without disrupting the on-going partnership. Gose, *The Charging Order Under the Uniform Partnership Act*, 28 Wash.L.Rev. 1 (1953).

Accordingly, the charging order operates, in effect, as a substitute for execution. And, we conclude, as did the Florida Court of Appeals in *Krauth v. First Continental Dev–Con, Inc.*, 351 So.2d 1106 (Fla. App.1977) that:

> It ... seems logical that, in the absence of precedent or statute to the contrary, the method of apportioning payment to judgment creditors from a partnership interest should be parallel to the method of determining priority among judgment creditors seeking execution on other kinds of personal property.

■ In Colorado, as to personal property, a writ of execution constitutes a lien upon the property which attaches when the writ is delivered to the sheriff. *Joslin v. Spangler*, 13 Colo. 491, 22 P. 804 (1889). Moreover, this lien has priority over other liens subsequently delivered. *Robinson v. Wright*, 90 Colo. 417, 9 P.2d 618 (1932).

Applying the foregoing principles of execution to charging orders, we hold that each charging order creates a lien upon a debtor partner's interest in the partnership, to wit, his distributive share of partnership's profits and surplus. We further hold that the lien attaches at the time the order is served upon the partnership. And, upon attachment, the charging order has priority, for full satisfaction of the creditor's judgment, over any other charging order subsequently served upon the partnership, regardless of the order in which the judgments were entered and the previous efforts, if any, made by the creditor to satisfy the judgment by other means. *See Krauth, supra.*

We disagree, moreover, that equity would favor the pro rata distribution imposed by the trial court here. The charging order is a post-judgment remedy. Hence, unlike pre-trial attachment, the rationale for which is preservation of property when pro rata distribution among creditors who intervene *prior* to final judgment is authorized, *see* C.R.C.P. 102(m), the charging order will, as a general rule, present a situation in which one judgment creditor is "first in time." For this diligent creditor, pro-rata distribution of the debtor's partnership interest creates uncertainty and unfair consequences in that it permits subsequent creditors to obtain orders of *equal* force against the *same* partnership interest. The effect is to force the diligent creditor to share his recovery with subsequent creditors who may later decide to go after the partnership interest and then diminish the amount the original creditor would otherwise be entitled to.

Hence, we conclude that equity supports a priority method of charging partnership interests. *See Krauth, supra.*

## II.

■ Union Colony next contends that its charging order was the first to be served on Wilshire and, thus, has priority status. We. agree.

The crux of Union Colony's argument is that the trial court erred in issuing United Bank's June charging order *nunc pro tunc* to the date of the bank's first writ of garnishment, thus making United Bank's charging order "first in time."

■ An order *nunc pro tunc* may be entered only in limited circumstances in which actions taken by the court were, through inadvertence, omitted from the record. *Board of Control of State Home v. Mulertz*, 60 Colo. 468, 154 P. 742 (1916). Accordingly, an order *nunc pro tunc* is not permitted when the character of the order so issued would differ from the character of the court's prior order. *See generally Breene v. Booth*, 3 Colo.App. 470, 33 P. 1007 (1893).

In light of the foregoing principles, the dispositive issue here is whether the charging order which the trial court issued in favor of United Bank in June was the same as, or different in character from, the writ of garnishment issued earlier that spring. We conclude that the two remedies are of a different character, and thus, the trial court erred in issuing United Bank's charging order *nunc pro tunc* to April 1990.

We acknowledge that both procedures are post-judgment remedies which extend to intangible personal property. However, the charging order, unlike garnishment, is a post-judgment remedy specifically tailored for partnerships. *See Gose, supra.* As previously noted, the remedy arose in response to the unique issues which confront partnerships, specifically the need to protect the interests of the non-debtor partners. *Myrick v. Second National Bank*, 335 So.2d 343 (Fla.App.1976).

The charging order, located in § 7–60–128, C.R.S. (1986 Repl.Vol. 6A), sits separate and apart from the general garnishment statutes located in § 13–54.5–101, et seq., C.R.S. (1987 Repl.Vol. 6A). Section 7–60–128, moreover, presents the charging order as a multi-faceted remedy under which the court has the authority to issue "such orders as are necessary to enforce its charging order." *City of Arkansas City v. Anderson*, 242 Kan. 875, 752 P.2d 673 (1988). *See also* Quiate, *The Charging Order: The Forgotten Stepchild of the UPA*, 6 Colo.Law. 629 (April 1977).

As noted by Professor Gose, in discussing the section of the UPA that corresponds to § 7–60–128:

> [T]he act seems to proceed on the theory that the primary method for satisfying the creditor's judgment shall be by means of an order diverting the debtor partner's share of the profits to his creditor in a manner somewhat like that used in garnishment proceedings. If this method is ineffectual there is another more drastic course of action mentioned—the sale of the debtor's interest in the partnership. . . .

Under § 7–60–128(2), C.R.S. (1986 Repl.Vol. 3A), however, notice to the non-debtor partners must precede such a sale. *First National Bank v. District Court*, 652 P.2d 613 (Colo.1982). And, partners may, at any time before foreclosure, redeem or purchase the interest charged or subject to sale.

The charging order is, thus, a flexible continuous procedure which, over the course of its existence, may take a number of different forms.

Garnishment, on the other hand, is neither so flexible, so sustained, nor so specific to the partnership interest as is the charging order.

Garnishment is governed by both statute and procedural rule and is a proceeding which allows a creditor to obtain, in satisfaction of its judgment, any money, credits, debts, property, or other effects of the debtor which may be under the control of a third party. 1A. Krendl, *Colorado Methods of Practice* § 801 (1989). However, procedural rules cannot abridge, enlarge, or modify substantive rights conferred by statute or common law. *Sherman v. City of Colorado Springs*, 729 P.2d 1014 (Colo.App.1986), *aff'd*, 763 P.2d 292 (1988).

Thus, we turn to the statutory provisions on garnishment to ascertain the nature and scope of this remedy, specifically, § 13–54.5–103, C.R.S. (1987 Repl.Vol. 6A), which identifies what property is subject to a writ of garnishment. It provides, *inter alia:*

> Any indebtedness, intangible personal property, or tangible personal property capable of manual delivery, other than earnings, owned by the judgment debtor *and in the possession and control of the garnishee at the time of service of the writ of garnishment upon the garnishee* shall be subject to the process of garnishment. (emphasis added)

This statute provides unequivocally that a writ of garnishment extends *only* to the property identified in the statute which is in the garnishee's actual possession and control on the date the writ is served. Indeed, the writ served on Wilshire closely paralleled the foregoing statute, providing in pertinent part:

This writ with notice applies to all personal property (other than earnings) owed to or owned by the judgment debtor and in your possession or control as of the date and time the writ is served upon you....

In short, if, as here, property other than earnings is being garnished, "the creditor may garnish only that property which is actually in the garnishee's possession at the time of service of the writ." *Krendl, supra.*

From this comparative analysis of the charging order and garnishment, we conclude that the character of the two remedies is not the same. While the charging order may, depending on the circumstances presented, mimic a garnishment proceeding, because of statutory constraints, garnishment cannot mimic the flexible and sustained character of charging orders. United Bank's "success" under the two writs of garnishment which it served upon Wilshire is illustrative of this point.

Accordingly, we hold that the trial court erred in issuing United Bank's charging order *nunc pro tunc* to the date of the first writ of garnishment.

In sum, inasmuch as Union Colony's charging order, issued and served in May 1990, was prior in time to that issued on behalf of United Bank in June 1990, Union Colony's charging order is "first in time." Union Colony is thereby entitled to full satisfaction of its judgment from Davis' partnership interest. Any money remaining after payment of Union Colony's judgment shall be applied toward payment of United Bank's judgment.

The order apportioning Davis' partnership interest between Union Colony and United Bank is reversed, and the cause is remanded with directions to the trial court to enter an order consistent with the views expressed in this opinion.

PLANK, J., concurs.

TURSI, J., dissents and files an opinion.

Judge TURSI dissenting.

I respectfully dissent.

Here, Union Colony, in order to circumvent the prior judgment of United Bank and to obtain a preference on a note which did not mature until after United Bank had a judgment and had issued a garnishment thereon, induced Davis to sign a confession of judgment and waiver of automatic stay of execution enabling it to obtain judgment and a charging order on the day it filed its complaint. At trial, the court noted the collusive nature of this procedure and fashioned an appropriate equitable remedy.

However, the trial court also held that, even absent the apparent collusive acts of Union Colony and Davis, fashioning an equitable remedy was within its statutory discretion. I agree.

Section 7–60–105, C.R.S. (1986 Repl.Vol. 3A) provides that: "In any case not provided for in this article, the rules of law and equity ... shall govern." Also, § 7–60–128(1), C.R.S. (1986 Repl.Vol. 3A) provides that: "On due application to a court of competent jurisdiction by any judgment creditor of a partner, the court which entered the judgment, order or decree, or any other court, *may* charge the interest of the debtor partner with payment of the unsatisfied amount of the judgment with interest thereon; and *may* then or later appoint a receiver of his share of the profits of any other money due or to fall due to him in respect of the partnership and make all other orders, directions, accounts, and inquiries which the debtor partner might have made, *or which the circumstances of the case may require.*" (emphasis added)

Thus, pursuant to these provisions of the Uniform Partnership Law, the trial court is empowered to fashion an equitable remedy in resolution of disputes concerning partnership matters. Absent an abuse of discretion by the trial court, we may not substitute our discretion for its.

Here, the trial court did not abuse its discretion. Therefore, I would affirm.