**In re Matthew F. BRIDGEMAN, Debtor.**

**John J. O'NEIL, Jr., Trustee, Plaintiff,**

**v.**

**Warren MILLER, Defendant.**

**Bankruptcy No. 94–23382.
Adv. No. 95–2034.**

United States Bankruptcy Court,
D. Connecticut.

June 5, 1996.

John J. O'Neil, Jr., Francis, O'Neil & Del Piano, Hartford, CT, for Plaintiff–Trustee.

Joel Kessler, Waterford, CT, for Defendant.

*MEMORANDUM OF DECISION*

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

I.

*ISSUE*

The principal question presented in this adversary proceeding, submitted to the court

**20**

upon a stipulation of facts and memoranda of law, is whether a trustee may avoid a creditor's prepetition attachment purportedly placed upon the debtor's partnership interest in a general partnership.

## II.

## BACKGROUND

Matthew F. Bridgeman (the "Debtor"), on October 15, 1993, was operating a restaurant, named The North End Deli, as a co-partnership with one Maurice Beebe Jr. ("Beebe"), in Groton, Connecticut. On that date, after notice and hearing, a Connecticut Superior Court, upon finding that Warren Miller, Trustee, ("Miller") had established probable cause to sustain his claim against the Debtor, granted Miller's application for a prejudgment remedy. *See* CONN.GEN.STAT.ANN. §§ 52–278a–52–278n (West 1991). The Superior Court ordered that Miller "may attach to the value of $45,000.00 the property of the [Debtor] as described on Exhibit A...." *Order for Prejudgment Remedy dated October 15, 1993.* Exhibit A, in addition to describing a bank account and two motor vehicles, listed the Debtor's "partnership interest in the North End Deli...." Whether the Debtor appeared and contested Miller's application is unknown on this record. On February 4, 1994, a deputy sheriff executed a certificate of service attesting that he had "attached the [Debtor's] partnership interest in the 'North End' partnership by leaving a true and attested copy hereof with and in the hands of Maurice Beebe Jr. a general partner at the North End Deli...." *Certificate of Service dated February 4, 1994.*

The Superior Court, on June 21, 1994, entered a judgment against the Debtor in favor of Miller for $53,274.97. Miller then applied for a property execution[1], which the Superior Court granted on August 3, 1994. The deputy sheriff, on August 12, 1994, served a copy of the property execution on "Maurice Beebe, the within named Person in Possession of Property of the Judgement Debtor, at the North End Deli...." *Certificate of Service dated August 12, 1994.*

The Debtor and Miller, on September 12, 1994, through counsel, appeared in the Superior Court and stated on the record that the parties had agreed to the terms of a consent order for the Court to enter. The gist of the recited terms was that Miller's judgment against the Debtor be "charged to The North End Deli, pursu[ant] to the applicable statute"; that the Debtor will assign to a deputy sheriff his partnership interest for the purpose of sale; that 30 days from date the deputy sheriff will conduct an advertised public sale of the partnership interest; that 2 days from date, the court shall appoint the deputy sheriff as receiver of the partnership interest to receive partnership monies; and that the deputy sheriff's sale shall be subject to court confirmation. *Miller v. Bridgman,* No. CV93–527958S, (Conn.Super.Ct.), *Transcript of September 12, 1994,* at 3. The Superior Court never entered an order containing such terms.

The Debtor, on September 23, 1994 petitioned for relief under Chapter 7 in this court and John J. O'Neil Jr. became trustee of the Debtor's estate. The Debtor's schedules listed the partnership interest as an asset and further indicated the Debtor's liabilities exceeded his assets. On May 2, 1995, this court authorized the trustee to sell the Debtor's partnership interest free and clear of liens with Miller's asserted lien to attach to sale proceeds. The trustee received $11,250.00 as sale proceeds which he now holds.

The trustee commenced the present proceeding by complaint filed on February 27, 1995. The complaint, as amended, asserted Miller's alleged lien was either unauthorized by statute, not properly perfected, or would constitute a voidable preference. Miller contends he held a perfected lien, not avoidable as a preference.

## III.

## DISCUSSION

## A.

Connecticut has enacted the Uniform Partnership Act (the "UPA") under which the

---

1. Connecticut General Statutes § 52–328(a) requires a creditor attaching personalty to take out an execution and have it levied within 60 days after final judgment.

property rights of a partner "are (1) his rights in specific partnership property, (2) his interest in the partnership, and (3) his right to participate in the management." CONN.GEN.STAT.ANN. § 34–62 (West 1987). The UPA provides, in effect, that a partner's property rights in both specific partnership property and in management cannot be attached or made subject to execution on a claim against the individual partner. CONN. GEN.STAT.ANN. §§ 34–63(2)(c); 34–65 (West 1987). For a *judgment* creditor of a partner, the UPA states that a partner's interest in the partnership is reached through a type of lien known as a charging order entered by a court after application. CONN.GEN.STAT.ANN. § 34–66 (West 1987) [2]. *See Madison Hills Limited Partnership II v. Madison Hills, Inc.*, 35 Conn.App. 81, 644 A.2d 363, 366, 368 (1994), *cert. denied*, 231 Conn. 913, 648 A.2d 153 (1994) ("A charging order is neither fish nor fowl. It is neither an assignment nor attachment . . . [and] replace[s] levies of execution as the remedy for reaching the interest of a partner . . . Foreclosure is one of the orders available to charging creditors."). "[T]he charging order evolved as a way to divert the debtor partner's share of the partnership profits and surplus to his creditor without disrupting the on-going partnership." *Union Colony Bank v. United Bank of Greeley Nat'l Ass'n*, 832 P.2d 1112, 1115 (Colo.Ct. App.1992).

On the question of whether a *prejudgment* remedy is available to a creditor claiming against the partnership interest of an individual partner, the UPA is silent, and Connecticut trial courts are not of one mind. Con-

necticut General Statutes § 52–299 [3], not a part of the UPA, refers to an action being brought "in which partnership property, or any interest therein, is attached to secure a claim against an individual partner only . . . ." CONN.GEN.STAT.ANN. § 52–299 (West 1991). Two Superior Court rulings hold that § 52–299 authorizes a prejudgment remedy. See *Doski v. Lyon & Billard Corp.*, 1993 WL 21206, at *1 (Conn.Super.Ct. Jan. 22, 1993) (Fuller, J.) ("[t]he remedy for attaching the interest of a partner in partnership property is a complaint in the nature of a bill in equity pursuant to Section 52–299 of the General Statutes."); *Centerbank v. Murphy*, 1993 WL 148725, at *2 (Conn.Super.Ct. Apr. 29, 1993) (O'Neill, J.) ("prejudgment attachments may be made on a partner's interest in a partnership for his personal debt[s]"; § 34–66 is not an exclusive remedy; a creditor can attach under § 52–299 "but in order to act on that attachment the creditor must obtain a judgment and then apply for a charge under . . . § 34–66.")

The majority of Superior Court rulings, however, hold that a prejudgment remedy by way of attachment of a partnership interest is not available to creditors of an individual partner. *See, Billias v. Gull Development*, 1990 WL 283879, at *2 (Conn.Super.Ct. Aug. 7, 1990) (Byrne, J.) ("Section 52–299 does not affect the requirement that plaintiff seek a charging order against Gull Development Corp. in accordance with Connecticut General Statutes Section 34–66 (rev'd to 1989) in order to reach Gull's partnership interest in High Ridge Realty Partnership."); *Galian v.*

---

**2.** Connecticut General Statutes § 34–66 provides:

> On due application to a competent court by any judgment creditor of a partner, the court which entered the judgment, order, or decree, or any other court, may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt with interest thereon; and may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect of the partnership, and make all other orders, directions, accounts and inquiries which the debtor partner might have made, or which the circumstances of the case may require.

CONN.GEN STAT ANN. § 34–66 (West 1987).

**3.** Connecticut General Statutes § 52–299 provides:

> When any action is brought to or is pending in the superior court, in which partnership property, or any interest therein, is attached to secure a claim against an individual partner only, any party to the action, or any member or members of such partnership, may file a complaint in the nature of a bill in equity in such court, which may, from time to time, make such order in the premises, either by granting an injunction, appointing a receiver, directing as to the disposition of the partnership property, the collection of the partnership debts and the application of the partnership funds, or otherwise, as to equity appertains.

CONN GEN.STAT.ANN. § 52–299 (West 1991).

*Lehn,* 1990 WL 264071, at *1 (Conn.Super.Ct. Nov. 15, 1990) (Spear, J.) (Section 52–299 does not authorize attachments—it is limited to instances occurring prior to 1973 when "attorneys could direct an attachment by a sheriff without any prior court approval."—prejudgment remedy to reach partnership property by creditor of individual partner denied); *Clark v. Walker,* 1993 WL 190408, at *2 (Conn.Super.Ct. May 26, 1993) (Higgins, J.) (request for prejudgment attachment of partnership property for debt of individual partner denied on authority of *Billias* and *Galian*); *Caliendo v. Greco,* 1992 WL 54710, at *1 (Conn.Super.Ct. Mar. 3, 1992) (Thim, J.) (prejudgment remedy of attachment of partnership interest for debt of individual partner "is barred by the Uniform Partnership Act"); *Fleet Bank, N.A. v. Blume,* 1993 WL 427346, at *2 (Conn.Super.Ct. Oct. 5, 1993) (Sullivan, J.) (prejudgment attachment of partnership interest by creditor of partner is unauthorized under Connecticut Statutes—court opines that creditor might seek injunction prohibiting transfer of such interest pending the determination of the action); *cf. Caliendo v. Coassin,* 1994 WL 613380, at *3 (Conn.Super.Ct. Oct. 25, 1994) (Levin, J.) (request for prejudgment garnishment of partner's ownership interest in law firm denied because "the defendant's interest in the 'profits and surplus' of the partnership which the plaintiff seeks to garnish are 'earnings' as defined in General Statutes § 52–350a(5) and therefore exempt from garnishment by General Statutes § 52–278b.").

### B.

As noted, the Superior Court in the state-court action brought by Miller against the Debtor authorized an attachment of the Debtor's "partnership interest in the North End Deli." However, I am persuaded, after considering the Connecticut court rulings described in Section A and other Connecticut authority, that even assuming Miller could properly obtain a court order for a prejudgment remedy, the action of the deputy sheriff simply to leave a copy of the order of attachment in the hands of Beebe was ineffective to lien the Debtor's partnership interest. The deputy sheriff at the time of the attachment (and the execution) took neither physical nor constructive possession of anything and accomplished nothing. *See Knox v. Binkoski,* 99 Conn. 582, 122 A. 400 (1923) (To constitute an attachment of personalty it is necessary for officers to take the property into possession either actually or constructively by placing keeper in charge, or by some act which unequivocally places the property in the officer's possession.) "As a general rule, a levy of an attachment upon personal property is made by a seizure or taking of possession or custody of the property, either actual or constructive. . . . A mere paper levy is not in general sufficient unless a statute makes it so." 6 AM.JUR. 2D *Attachment and Garnishment* § 296 (1963). *Cf. Union Colony Bank,* 832 P.2d at 1115–16 (garnishment not the same as charging order and when charging order later obtained by judgment creditor it will not relate back to garnishment previously obtained by same creditor served on partnership—"the charging order, unlike garnishment, is a post-judgment remedy specifically tailored for partnerships").

Whether Connecticut recognizes any prejudgment remedy [4] for a creditor of an individual partner or whether such prejudgment remedy can include the issuance of an injunction prohibiting transfer by the defendant partner of his interest in the partnership, or a complaint in the nature of a bill in equity, is, of course, not decided in this proceeding.

### C.

The in-court statements of the parties on September 12, 1994 could not, and did not, as contended by Miller, constitute a charging order, in the absence of an order entered by the court. And even if they did,

---

4. Connecticut General Statutes § 52–278a(d) provides:

"Prejudgment remedy" means any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment but shall not include a temporary restraining order.
CONN.GEN STAT ANN. § 52–278a(d) (West 1991).

such order would have been entered 11 days prior to the Debtor's bankruptcy filing, would not relate back to the date of the judgment, to any valid attachment or property execution, and would be avoidable as a preferential transfer, pursuant to Bankruptcy Code § 547.

## IV.

### *CONCLUSION*

For the reasons stated, the trustee's request that the court determine the lien asserted by Miller against the proceeds of the sale of the Debtor's interest in the partnership is invalid and void has been justified, and a judgment will so enter.