[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR TURNOVER ORDER
This matter involves the interplay of orders and civil process in this case, D.N. CV00 0434995 Tobin Melien v. Jack E. Catalano, Superior Court New Haven, ("the civil case") with the court orders in D.N. FA96 0385375 Mary Grace Catalano v. Jack E. Catalano, Superior Court New Haven ("the family case"). In the civil case, the plaintiff Tobin Melien sued the defendant Jack Catalano for failing to pay for certain legal services. The legal services were rendered by the plaintiff law firm beginning in 1996 in connection with the family case which involved the CT Page 9371 defendant Jack Catalano's divorce from Maiy Grace Catalano.
The family case culminated in a judgment dated February 4, 1998. As part of that judgment, the defendant was ordered to pay alimony and child support, to turn over portions of certain IRA, bank, and credit union accounts to Ms. Catalano, and to cooperate in the sale of the jointly-owned marital residence, the net proceeds of which were to be divided the spouses, 65% to the wife and 35% to the husband. The defendant failed to comply with many of these orders, such that he owed a substantial debt to Ms. Catalano. In June 1999, Ms. Catalano caused her attorney to file a motion for contempt against the defendant.
As part of the initial resolution of the contempt motion, the defendant agreed to cooperate with Ms. Catalano's attorney, Louis Pacelli, in getting the house sold. On June 30, 1999, while represented by Attorney Edward Dolan, the defendant signed a waiver of conflict of interest to allow Attorney Pacelli to do the closing. The written agreement also provided that Pacelli was to hold in escrow that portion of the proceeds of sale to which the defendant might otherwise have been entitled — $23,774 — pending a resolution of Ms. Catalano's claims for substantial money due from the defendant. The court entered no orders at all on that date related to the ownership or distribution of the closing proceeds. The house closing proceeded and Pacelli deposited the defendant's share in an escrow account.
While that money was being held in escrow by Attorney Pacelli, the defendant's former attorneys Tobin Melien commenced this civil case in February of 2000. The plaintiff obtained a prejudgment remedy of $10,159.80 against the defendant on May 8, 2000.
Meanwhile on May 15, 2000, the defendant filed a postjudgment motion in the family case entitled Motion for Status Conference, asking for the court to make a determination of and enter orders for the distribution of the money held in escrow by Attorney Pacelli.
On May 31, 2000, in the civil case, Deputy Sheriff Peter Criscuolo served a writ of attachment and the Order for Prejudgment Remedy upon Pacelli and made demand for such sums to effect the attachment. Pacelli refused to turn over to the sheriff any portion of the defendant's share of the escrowed funds.
On June 30, 2000, Attorney Dolan on behalf of the defendant and Attorney Pacelli on behalf of Ms. Catalano appeared in the family case to present an agreement on the record pursuant to the pending postjudgment motions. Although they disagreed as to the actual total owed to Ms. Catalano, they agreed that it was more than the $23,774 that represented CT Page 9372 the defendant's share of the net proceeds of the sale of the house. They stipulated to an accord in which Ms. Catalano agreed to accept, as full payment of the debt due, the defendant's $23,774 from the escrow account; and the defendant "waive[d] all claims to those proceeds in [the] account." Transcript of June 29, 2000, p. 4, lines 25-26. As part of the colloquy on the record, the attorneys made mention of the fact that Attorney Pacelli had been served with the attachment papers in the civil case. The attorneys agreed to defer the disbursement of the escrowed funds for two weeks to allow the plaintiff in the civil case to assert its claim to the attached funds in the family case. The court (Robaina, J.) then stated, "Orders are entered in accordance with the stipulation. The orders are stayed for two weeks until July 13th, pending notification of a potential claim as to the funds that are being held in escrow by Mr. Pacelli." Transcript, p. 9, lines 1-5.
Sure enough, on July 12, 2000, in the family case, Tobin Melien filed a Petition to Enjoin Disbursement of Funds. No court action occurred thereafter in the family case, but Mr. Pacelli did not disburse the disputed funds and continues to hold them to this day.
Meanwhile, back in the civil case, Tobin Melien moved for leave to cite in Mr. Pacelli as a garnishee and to amend the writ and complaint to summon Mr. Pacelli to appear in the civil case in that capacity. That motion was granted by the court (Jones, J.) on October 2, 2000, and a new writ and summons naming Pacelli as a garnishee was served on Pacelli on October 23, 2000.
The civil matter proceeded to judgment on December 21, 2000, and damages were awarded to the plaintiff in the amount of $11,442.51 plus court costs of $262, for a total of $11,714.51. The plaintiff then applied for and obtained a property execution, which it served on Pacelli on February 8, 2001. Pacelli declined to pay over any funds. The plaintiff filed an Application for Turnover Order as to the Pacelli escrow funds on June 13, 2001.[1] On July 2, 2001, Attorney Joseph Patchen on behalf of Tobin Melien and Attorney Pacelli on his own behalf appeared in this matter and were heard on whether Pacelli was obligated to turn over the funds. Attorney Pacelli argues that Ms. Catalano's claim to the funds and the agreement of the parties on June 29, 2000 — approved and made a court order in the family case — forecloses any claim by Tobin Melien to the funds, since that order was entered before the writ of garnishment was served. Tobin Melien argues that service of its writ of attachment on Pacelli was first in time, that Pacelli was under an obligation as of that date to turn over the funds, and that the turnover order should relate back to that date.
Attachment and garnishment are now and have always been different CT Page 9373 procedural devices. Professor Stephenson's treatise on Connecticut procedure traces the history of these devices from English common law to the present statutory scheme and provides an explanation of the differences.
 Attachment is a procedure under which tangible property is brought into custodis legis to await disposition by the court. . . . Attachment, however, is not effective for intangible property, which is physically incapable of being seized. . . . Such property is reached by garnishment of the person who is in possession of the chattel or is indebted to the defendant. Attachment is based on the court's control over tangible property through the possession (actual or symbolic) of the sheriff. The power behind garnishment is the court's control over a person who "owes" either goods or money to a defendant.
Stevenson, Connecticut Civil Procedure (2nd ed. 1982) vol. 1, Sec. 37, p. 144-45. Should the garnishee nonetheless pay the defendant the debt regardless of having been served with a writ of garnishment, the garnishee may be held personally liable to the plaintiff for the amount the garnishee owed to the defendant up to the amount of any eventual judgment in favor of the plaintiff. Id., and at p. 310.
Under the present statutory scheme, attachments are governed by Conn. Gen. Stat. Sec. 52-280:
 A writ of attachment shall be served by attaching the estate of the defendant, personal or real, or both. The officer serving the process shall leave with the person whose estate was attached, or at his usual place of abode, if within the state, a true and attested copy of the process and of the accompanying complaint, and of his return thereon, describing any estate attached.
Since at least 1819, Connecticut case law has made it clear that an attachment is invalid if it is not consummated by the levying officer taking actual possession of the attached property. Burrows v. Stoddard,3 Conn. 160, 165 (1819), accord after remand for new trial, 3 Conn. 431,434 (1820) (attachment of cattle ineffective if cattle left at or redelivered to defendant's farm). This is so regardless of how difficult it may be to actually attach the property. See, Knox v. Binkoski,99 Conn. 582, 591-93 (1923) (failure of sheriff to actually seize three lions belonging to defendant rendered attachment ineffective). "That CT Page 9374 possession be taken and held by the officer is in all cases indispensable. . . ." Id., 593.
Garnishment deals with property of such a nature that it cannot be attached. Conn. Gen. Stat. Sec. 52-329[2] provides:
 When the effects of the defendant in any proposed or pending civil action in which a judgment or decree for the payment of money may be rendered are concealed in the hands of his agent or trustee so that they cannot be found or attached, or when a debt other than earnings, as defined in subdivision (5) of section 52-350a, is due from any person to such defendant . . . the plaintiff may insert in his writ, subject to the provisions of sections 52-278a to 52-278g, inclusive, a direction to the officer to leave a true and attested copy thereof and of the accompanying complaint, at least twelve days before the return day, with such agent, trustee or debtor of the defendant, or, as the case may be, with the executor, administrator or trustee of such estate, or at the usual place of abode of such garnishee; and from the time of leaving such copy all the effects of the defendant in the hands of any such garnishee, and any debt due from any such garnishee to the defendant, . . . not exempt from execution, shall be secured in the hands of such garnishee to pay such judgment as the plaintiff may recover. . . .
The statute provides that as of the time garnishment process is served on the garnishee, any debt due the defendant "shall be secured in the hands of such garnishee to pay such judgment as the plaintiff may recover." It is necessary that the garnishee be specifically named. See Stevenson, supra, Sec. 58, p. 231.
In the instant case, the sheriff first attempted to effectuate an attachment of the property of the defendant by serving a writ of attachment and a copy of the Order of Prejudgment Remedy on Pacelli on May 30, 2000. Pacelli refused to deliver up any property of the defendant. In fact, Pacelli never had any tangible personal property of the defendant that could be seized. The only property of the defendant that Pacelli had was the debt owed by Pacelli to the defendant by virtue of holding the funds from the house closing in escrow. It is the kind of intangible property that can only be reached by garnishment process, not by attachment. CT Page 9375
So despite the writ and the demand, the sheriff failed to attach anything. True, the sheriff made oral demand upon Pacelli as though Pacelli were a garnishee. The sheriff's return even refers to Pacelli as a garnishee and as the "Agent Trustee and Debtor of said Defendant(s). . . ." But the legal papers from which the sheriff derived his authority consisted only of "the original Summons, [and] Exhibit A [which was the] Signed Order of Prejudgment Remedy. . . ." The "writ," which is the direction by some lawful authority to the officer to perform some act, was one of attachment, not of garnishment. See Stephenson, supra, Sec. 58, p. 230. There was no authority conferred on the sheriff to command anyone aside from the defendant to do anything. The fact that Pacelli received these papers and was thus made aware that an order of prejudgment remedy existed is of no moment. The papers themselves did not direct Pacelli to appear anywhere or to deliver anything to anyone. In fact the papers did not even contain Mr. Pacelli's name.
Only thereafter did the plaintiff Tobin Melien obtain permission to cite in Pacelli[3] as a garnishee, that is, as one in possession of intangible property of the defendant in the form of debts due out of the escrow account. The writ and summons then served on Pacelli on October 23, along with the amended complaint in the civil case, commanded the sheriff to
 attach and/or garnish to the value of . . . $10,159.80 the property, assets, and or debts due the defendant Jack E. Catalano, and summon Louis M. Pacelli, Esq., to appear [in the civil action] . . . to disclose on oath whether he is indebted to the Defendant and/or whether said garnishee is in possession of the Defendant's assets.
In its Motion to Cite In Garnishee, the plaintiff Tobin Melien correctly stated the scope of the court's authority over the garnishee. A court may order that a garnishee be cited in
 for the sole purpose of having said garnishee disclose under oath whether he has in his hands the goods or effects of the Defendant. Said disclosure, thereafter, can be used as prima facie evidence if the plaintiff recovers judgment and brings a scire facias action against the garnishee.
Motion, Doc #110, p. 2.
But of course in the meantime, the court in the family case had CT Page 9376 approved Ms. Catalano's claim to the funds and had ordered that a distribution to her take place. Tobin Melien filed what amounted to an objection thereafter, asserting a prior claim to the funds as a result of its prejudgment remedy and its writ of attachment. That claim was not perfected, however, as the writ of attachment was ineffective.
This court is then asked to decide whether Attorney Pacelli has any obligation to turn over to the plaintiff funds still on deposit in his escrow account, given the various court orders that have entered in the civil and family cases and the legal process that has been served on him. This court finds that Pacelli was not subject to any obligation to the plaintiff until served with the writ of garnishment. As of that date, the prior Superior Court order in the family case governed. The court had decreed that the funds were now those of Ms. Catalano and should be distributed accordingly.
The Application for Turnover Order is denied.
Patty Jenkins Pittman, Judge